# STATE OF MICHIGAN

# COURT OF APPEALS

KATHARINE MARIE SPRAGUE,

Plaintiff-Appellant,

v

ROBERT FRANKLIN HOUSTON BRAY,

Defendant-Appellee.

UNPUBLISHED
September 27, 2016

No. 331280
Lapeer Circuit Court
Family Division
LC No. 14-047491-UM

Before: BORRELLO, P.J., and MARKEY and RIORDAN, JJ.

PER CURIAM.

Plaintiff appeals as of right a final order closing the case in this child support and parenting time dispute. However, the issues raised by plaintiff on appeal relate to the trial court's prior order granting defendant out-of-state parenting time. We vacate the trial court's parenting time modification and remand for reevaluation of the contested best-interest and parenting-time factors.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The parties' minor daughter, EB, was born while plaintiff and defendant were married and residing together in Delaware. In 2013, the parties separated and filed for divorce in that state. On November 23, 2014, plaintiff and EB moved to Lapeer, Michigan, with defendant's consent, and defendant moved to Pennsylvania. On March 20, 2014, the parties entered an interim consent order in Delaware, which granted plaintiff sole legal custody of EB and established an interim parenting time schedule that allowed defendant visitation in Michigan once per month and FaceTime communication with EB every other day. A divorce decree was entered in the Delaware divorce case on April 3, 2014, and plaintiff's related petition for custody was dismissed without objection on May 14, 2014.

Because plaintiff was not awarded child support through the Delaware proceeding, she filed a complaint for child support in the Lapeer Circuit Court on April 7, 2014. On June 12, 2014, defendant filed a motion in connection with the Michigan child support case, which sought modification of the parenting time schedule established by the March 20, 2014 interim consent

-1-

order.[1] The child support and parenting time matters were referred to the Friend of the Court ("FOC") for an evidentiary hearing. The FOC referee initially refused to proceed with the hearing as it related to defendant's request for parenting time given his concerns that the court did not have jurisdiction to modify the Delaware order under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), MCL 722.1101 *et seq.*

However, at a later hearing in February 2015, the referee concluded that the Delaware court had implicitly relinquished its jurisdiction over the matter by failing to respond to four inquiries from the referee regarding the UCCJEA jurisdictional issue. At that time, the parties had reached an agreement regarding the reunification of defendant and two-year-old EB, which would be accomplished by granting defendant gradually increasing periods of weekend parenting time in Michigan. If the proposed "ramp-up" parenting time agreement was successful, defendant would eventually receive one week of parenting time each month, to take place at his home in Pennsylvania. This parenting time agreement was memorialized in the referee's recommendation and the trial court order entered in accordance with the recommendation. The referee directed the parties to return for a follow-up hearing in July 2015 to evaluate defendant's progress with EB and to determine whether it was appropriate to begin the out-of-state parenting time contemplated by the final stage of the agreement.

Following a breakdown in the parties' temporary agreement based on defendant's failure to exercise all of the parenting time permitted under the "ramp-up" schedule, the FOC conducted a full evidentiary hearing on the parenting time issue in September 2015. At that time, the referee heard testimony from the parties; defendant's new wife, Karleen Krenicky; plaintiff's father, William Sprague; and two employees of Kids in New Directions ("KIND") who had provided supervision during three of defendant's visits with the child. The referee then issued a recommendation that defendant receive the following parenting time: five consecutive days, every other month, to take place at his home in Media, Pennsylvania; weekend parenting time in Michigan during the second full week of the months when he was not exercising parenting time in Pennsylvania; and remote communication by FaceTime, or a similar application, on Tuesdays, Thursdays, and Sundays. A temporary order was entered in accordance with the referee's recommendation. Both parties then filed objections to the referee's recommendations. After conducting a *de novo* review, the trial court adopted the referee's recommendations in full except for several minor changes that are not relevant to this appeal.

## II. UCCJEA JURISDICTION

Plaintiff first contends that the trial court's order must be reversed because the court did not have subject-matter jurisdiction to modify the interim consent order entered in Delaware. We disagree.

## A. STANDARD OF REVIEW

---

[1] Defendant's motion was identified as a motion for custody and parenting time, but defendant later confirmed that he was not necessarily seeking a change in the parties' custody arrangement.

"The question whether a court has subject-matter jurisdiction to hear a particular claim is a question of law that we review de novo. However, the determination whether to exercise jurisdiction under the UCCJEA is within the discretion of the trial court and will not be reversed absent an abuse of that discretion." *Jamil v Jahan*, 280 Mich App 92, 99-100; 760 NW2d 266 (2008).

Plaintiff's challenge to the trial court's jurisdiction requires interpretation of the UCCJEA. Issues of statutory interpretation are reviewed *de novo* as questions of law. *Atchison v Atchison*, 256 Mich App 531, 534-535; 664 NW2d 249 (2003). We examine the plain language of the statute in order to effect the intent of the Legislature. *Id*. at 535. "If the statutory language is unambiguous, appellate courts presume that the Legislature intended the meaning plainly expressed and further judicial construction is neither permitted nor required." *Id*.

## B. ANALYSIS

### 1. JURISDICTION UNDER MCL 722.1203

The UCCJEA was designed to address several concerns that arise in interstate custody matters, including issues involving the exclusive, continuing jurisdiction held by the state that first enters a decree regarding the custody of a minor. *Atchison*, 256 Mich App at 536. It "prescribes the powers and duties of the court in a child-custody proceeding[2] involving [Michigan] and a proceeding or party outside of this state[.]" *Cheesman v Williams*, 311 Mich App 147, 151; 874 NW2d 385 (2015) (quotation marks and citation omitted).

Under the UCCJEA, "once an initial child-custody determination occurs, exclusive, continuing jurisdiction generally remains with the decreeing court." *Atchison*, 256 Mich App at 538, citing MCL 722.1202. Thus, "[o]nce a court of another state has rendered a child-custody determination, a Michigan court shall not modify[3] this order . . . unless certain criteria are established" pursuant to MCL 722.1203. *Atchison*, 256 Mich App at 537. Under MCL 722.1203, except in matters requiring temporary emergency jurisdiction,

> a court of this state shall not modify a child-custody determination made by a court of another state unless a court of this state has jurisdiction to make an initial child-custody determination under [MCL 722.1]201(1)(a) or (b) *and* either of the following applies:

---

[2] " 'Child-custody proceeding' means a proceeding in which legal custody, physical custody, or *parenting time* with respect to a child is an issue." MCL 722.1102(d) (emphasis added).

[3] Under the UCCJEA, " '[m]odification' means a child-custody determination that changes, replaces, supersedes, or is otherwise made after a previous child-custody determination concerning the same child, whether or not it is made by the court that made the previous child-custody determination." MCL 722.1102(k).

(a) The court of the other state determines it no longer has exclusive, continuing jurisdiction under [MCL 722.1]202 or that a court of this state would be a more convenient forum under [MCL 722.1]207.

(b) A court of this state or a court of the other state determines that neither the child, nor a parent of the child, nor a person acting as a parent presently resides in the other state. [Emphasis added.]

In other words, the Lapeer Circuit Court had jurisdiction to modify the existing child-custody determination made by the Delaware court concerning EB if two criteria were satisfied: (1) Michigan courts had jurisdiction to make an initial child-custody determination regarding EB, and (2) there was a determination, as described in MCL 722.1203(a), by the Delaware court that entered the existing decree, or there was a determination by either the Delaware court or the Lapeer Circuit Court, that none of the individuals listed in MCL 722.1203(b) resided in Delaware at that time. *Jamil*, 280 Mich App at 100-101; *Atchison*, 256 Mich App at 537-538.

With regard to the first prong, the record shows that Michigan courts had jurisdiction to make an initial child-custody determination with regard to EB when the child custody proceedings were initiated in this case. See *Jamil*, 280 Mich App at 100; *Atchison*, 256 Mich App at 537. In relevant part, MCL 722.1201(1)(a) states that "a court of this state has jurisdiction to make an initial child-custody determination" if "[t]his state is the home state of the child on the date of the commencement of the proceeding[.]" Michigan is a minor child's home state if it is "the state in which a child lived with a parent or a person acting as a parent for at least 6 consecutive months immediately before the commencement of a child-custody proceeding." MCL 722.1102(g). EB moved to Michigan with plaintiff on or about November 23, 2013. Therefore, Michigan became EB's "home state" for purposes of the UCCJEA six months later, on May 23, 2014, and it remained her "home state" when defendant initiated the "child-custody proceeding" at issue in this case on June 12, 2014, by filing a motion to modify the parenting time arrangement under the Delaware interim consent order.[4] See *Fisher v Belcher*, 269 Mich App 247, 256-257, 259-260; 713 NW2d 6 (2005) (explaining that a "child support complaint d[oes] not give rise to a child custody proceeding for purposes of determining jurisdiction under the UCCJEA," and that a subsequent request concerning custody or parenting time does not relate back to the filing of the child-support complaint for purposes of determining jurisdiction under the UCCJEA). Thus, because Michigan was EB's "home state" when the child-custody proceeding was commenced, the Lapeer Circuit Court had jurisdiction to make an

---

[4] Plaintiff's complaint for child support was filed on April 7, 2014, before Michigan qualified as EB's "home state." However, as mentioned *supra*, the term "child-custody proceeding" is defined by the UCCJEA as "a proceeding in which the legal custody, physical custody, or parenting time with respect to a child is an issue," and it does not include actions for child support. MCL 722.1102(d); *Fisher v Belcher*, 269 Mich App 247, 256-257; 713 NW2d 6 (2005). Because plaintiff's April 7, 2014 complaint only implicated defendant's financial support obligations and did not involve custody or parenting time issues, it did not commence a child-custody proceeding for purposes of the jurisdictional question at issue in this appeal.

initial determination regarding her custody unless otherwise prohibited from doing so under the UCCJEA.[5]

Having satisfied the first criterion, the next question is whether either of the alternatives in MCL 722.1203(a) or (b) is applicable to the circumstances in this case. See *Jamil*, 280 Mich App at 100-101. We agree with plaintiff that the referee erroneously concluded that the Delaware court's inaction amounted to a formal determination ceding jurisdiction to Michigan under MCL 722.1203(a). However, the circumstances in this case satisfy the alternative jurisdictional basis set forth under MCL 722.1203(b). As previously stated, MCL 722.1203(b) allows a Michigan court to modify an existing child-custody decree if "[a] court of this state or a court of the other state determines that neither the child, nor a parent of the child, nor a person acting as a parent presently resides in the other state." It was undisputed below that neither EB nor her parents were residing in Delaware when the child-custody proceedings were initiated. Thus, the Lapeer Circuit Court had jurisdiction to modify the interim consent order pursuant to MCL 722.1203. We will not reverse the trial court's exercise of jurisdiction because it reached the correct result, albeit for the wrong reasons. See *Klooster v Charlevoix*, 488 Mich 289, 313; 795 NW2d 578 (2011).

## 2. IMPLICATIONS OF MCL 722.1206

In the lower court, the referee initially concluded that he could not proceed with defendant's request for a modification of the interim consent order without an order from Delaware explicitly relinquishing its exclusive, continuing jurisdiction under MCL 722.1206. Plaintiff also relies on MCL 722.1206 in support of her jurisdictional claim on appeal. However, in invoking this section, plaintiff conflates the UCCJEA's jurisdictional requirements for simultaneous child-custody proceedings under MCL 722.1206 with its jurisdictional requirements for the modification of existing child-custody decrees under MCL 772.1203.

Under MCL 722.1206(1), except in cases involving temporary emergency jurisdiction, a Michigan court is not permitted to exercise its jurisdiction under the UCCJEA when a child-custody proceeding *already has been commenced* in another state, "unless the proceeding has been terminated or is stayed by the other state because a court of this state is a more convenient forum[.]" In this case, however, it is undisputed that the parties' divorce was finalized in

---

[5] Plaintiff argues that the trial court did not have jurisdiction to make an initial child-custody determination under MCL 722.1201(1)(a) because Delaware was EB's home state when a child-custody proceeding was actually commenced there in conjunction with the divorce proceeding and, as a result, Michigan could not have jurisdiction to enter an *initial* child-custody determination because Delaware had jurisdiction to—and did, in fact—enter an *initial* order regarding EB's custody. We reject plaintiff's reasoning, as it necessarily results in a finding that Michigan courts are unable to modify existing decrees from other states, as the existence of an earlier decree would always prevent a Michigan court from making an "initial" child-custody determination. Such an understanding is undermined by the plain language of the UCCJEA and our existing caselaw. See, e.g., *Jamil*, 280 Mich App at 100-101; *Atchison*, 256 Mich App at 537-538.

Delaware on April 3, 2014. At the September 16, 2014 FOC hearing, the referee read into the record an order of dismissal that had been filed in the Delaware court on May 14, 2014, which read, "The following petition is hereby dismissed without prejudice, Petition for Custody and Counterclaim, at the request of the Petitioner; no objection by Respondent." Consistent with these records, the referee expressly found at the February 25, 2015 hearing that "the Delaware proceeding has in fact been completely terminated[.]"

Thus, based on the record received on appeal, a simultaneous proceeding was not pending in Delaware when the child-custody proceeding was commenced in Michigan on June 12, 2014, as the Delaware action was terminated no later than May 14, 2014. Accordingly, in contrast to the referee's initial—and erroneous—conclusion, the provisions of MCL 722.1206 are inapplicable here. As explained above, the standard set forth in MCL 722.1203 controls the jurisdictional issue in this case.

## III. PARENTING TIME MODIFICATION

Next, plaintiff contends that the trial court committed a series of errors related to its consideration of whether defendant demonstrated proper cause or a change in circumstances warranting modification of the parenting time schedule and whether modification of defendant's parenting time was in the child's best interests. We agree that the trial court committed clear legal error by failing to make explicit findings with regard to several best-interest and parenting-time factors that were contested by the parties.

## A. PRESERVATION

Although plaintiff preserved the majority of her claims by raising them in the trial court, she did not challenge below the trial court's alleged failure to make a determination regarding the existence of an established custodial environment. See *Loutts v Loutts*, 298 Mich App 21, 23; 826 NW2d 152 (2012). However, we may overlook a party's failure to preserve a claim "when failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Mitchell v Mitchell*, 296 Mich App 513, 521; 823 NW2d 153 (2012) (quotation marks and citation omitted). The existence of an established custodial environment affects the standards applicable to plaintiff's other claims of error. See *Shade v Wright*, 291 Mich App 17, 22-23, 26-28; 805 NW2d 1 (2010). Thus, because consideration of the issue is necessary for a proper determination of the case, we will disregard plaintiff's failure to preserve this claim.

## B. STANDARD OF REVIEW

"Orders concerning parenting time must be affirmed on appeal unless the trial court's findings were against the great weight of the evidence, the court committed a palpable abuse of discretion, or the court made a clear legal error on a major issue." *Pickering v Pickering*, 268 Mich App 1, 5; 706 NW2d 835 (2005). "Under the great weight standard, the trial court's factual determinations will be affirmed unless the evidence clearly preponderates in the other direction." *Butler v Simmons-Butler*, 308 Mich App 195, 200; 863 NW2d 677 (2014). An abuse of discretion occurs when the result is " 'so palpably and grossly violative of fact and logic that it

evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.' " *Shulick v Richards*, 273 Mich App 320, 324; 729 NW2d 533 (2006), quoting *Spalding v Spalding*, 355 Mich 382, 384-385; 94 NW2d 810 (1959). "A court commits legal error when it incorrectly chooses, interprets, or applies the law." *Pickering*, 268 Mich App at 5 (quotation marks and citation omitted).

## C. ANALYSIS

### 1. PROPER CAUSE FOR MODIFICATION

As further discussed later in this opinion, a trial court is only permitted to grant parenting time in accordance with a child's best interests. See MCL 722.27a(1); *Shade*, 291 Mich App at 31.[6] However, as an initial matter, a court shall not modify a parenting time order unless the moving party first demonstrates proper cause or a change of circumstances warranting the modification. MCL 722.27(1)(c); *Shade*, 291 Mich App at 22-23. Plaintiff contends that defendant failed to demonstrate proper cause or a sufficient change in circumstances. We disagree.

As plaintiff emphasizes on appeal, the trial court failed to make a finding regarding the existence of an established custodial environment and whether an existing established custodial environment would be altered by the proposed parenting time modification. Such a finding was necessary, as it affected the degree of proper cause or change of circumstances necessary to modify the prior parenting time order as well as the burden of proof applicable to the best-interest determination. *Id*. at 23, 26-29. "Where a trial court fails to make a finding regarding the existence of a custodial environment, this Court will remand for a finding unless there is sufficient information in the record for this Court to make its own determination of this issue by de novo review." *Jack v Jack*, 239 Mich App 668, 670; 610 NW2d 231 (2000) (quotation marks and citation omitted). There is sufficient information in the record for us to conclude that EB had an established custodial environment with plaintiff.

Pursuant to MCL 722.27(1)(c),

[t]he custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered.

Stated differently,

---

[6] MCL 722.27a was amended, effective August 1, 2016. 2016 PA 96. All citations to the statute in this opinion are to the statute's prior codification, which was in effect during the proceedings concerning the parenting time modification.

[a]n established custodial environment is one of significant duration in which a parent provides care, discipline, love, guidance, and attention that is appropriate to the age and individual needs of the child. It is both a physical and a psychological environment that fosters a relationship between custodian and child and is marked by security, stability, and permanence. [*Berger v Berger*, 277 Mich App 700, 706; 747 NW2d 336 (2008).]

In this case, EB resided with both parties in Delaware for the first 14 months of her life, but she and plaintiff subsequently moved to Michigan in November 2013 with defendant's consent. The limited testimony concerning defendant's involvement with EB before she and plaintiff relocated to Michigan was largely negative. It indicated that defendant had minimal interaction with EB and that he indirectly threatened her during a drunken outburst on at least one occasion. Between November 2013 and April 2014, defendant only had sporadic contact with EB via FaceTime, and he did not attempt to visit her until shortly after this action was filed. Even after he began exercising parenting time on a more frequent basis, the visits were limited in duration. On the other hand, after November 2013, plaintiff resided with EB and was solely responsible for EB's upbringing, although plaintiff received considerable assistance from EB's maternal grandparents. Plaintiff testified regarding her close relationship with EB, their favorite activities together, and plaintiff's efforts to encourage EB's development by enrolling her in swim classes and a daycare program with an educational curriculum. Given EB's young age and consistent contact with plaintiff, it is overwhelmingly apparent that her established custodial environment was with plaintiff.

Parenting time modifications do not necessarily result in a change in the established custodial environment, *Rains v Rains*, 301 Mich App 313, 340; 836 NW2d 709 (2013), and despite plaintiff's claims, the proposed modification in this case was unlikely to affect the established custodial environment, cf. *id*. at 341 (finding that a parenting time modification which gave the plaintiff 2¼ fewer overnights each month was not likely to change whom the child naturally looked to for guidance, discipline, the necessities of life, and parental comfort). Rather, it is clear that the modification in this case only amounted to "a change in the duration or frequency of parenting time[.]" *Kaeb v Kaeb*, 309 Mich App 556, 570; 873 NW2d 319 (2015). Although defendant gained bimonthly out-of-state parenting time, he only gained, numerically speaking, an additional three days of parenting time every other month. Likewise, the alternating parenting time schedule still included extended gaps between defendant's bimonthly out-of-state parenting time, which lasts for a five-day period, and his bimonthly in-state parenting time, which lasts for one weekend. As a result, EB continued to spend the vast majority of her time in plaintiff's care under the modified parenting time schedule, and the schedule did nothing to limit EB's contact with plaintiff through remote methods while in defendant's care.

Thus, because there is no indication that the modified parenting time schedule will change EB's established custodial environment, the threshold inquiry—*i.e.*, whether defendant demonstrated proper cause or a sufficient change of circumstances—is more expansive than the

threshold required for a change in custody. *Shade*, 291 Mich App at 27-28.[7] "[T]he very normal life change factors that [would be] insufficient to justify a change in custodial environment are precisely the types of considerations that trial courts should take into account in making determinations regarding modification of parenting time." *Id*. at 30. Plaintiff contends that the trial court erroneously relied on the referee's findings, including his determination that defendant's marriage to Krenicky and the birth of EB's half-brother were sufficient reasons to consider modification of the parenting time arrangement, because these events did not constitute proper cause or a sufficient change in circumstances. However, because the modified parenting time schedule will not change EB's established custodial environment, these normal life changes may constitute sufficient grounds for a parenting time modification. See *id*. at 30-31. The trial court did not abuse its discretion in concluding that these circumstances justified modification of defendant's parenting time. See MCL 722.27(a).

## 2. BEST INTERESTS OF THE CHILD

Lastly, plaintiff challenges the trial court's finding that modification of defendant's parenting time was in the best interests of the child. See *Shade*, 291 Mich App at 31, citing MCL 722.27a(1). Where, as here, the proposed change will not alter the child's established custodial environment, the party requesting the modification must demonstrate by a preponderance of the evidence that the proposed parenting time schedule is in the best interests of the child. *Shade*, 291 Mich App at 23, 30-31.

"Both the statutory best interest factors in the Child Custody Act, MCL 722.23, and the factors listed in the parenting time statute, MCL 722.27a(6),[8] are relevant to parenting time decisions." *Shade*, 291 Mich App at 31. However, contrary to plaintiff's claims on appeal, the trial court was not required to address the best-interest factors under MCL 722.23 if the parenting time modification did not result in a change of custody. *Id*. at 32. Likewise, although a trial court is required to make findings with regard to all of the best-interest factors when it makes a custody decision, it is only required to make findings on the contested issues when it makes a parenting time decision. *Id*. at 31-32. But, in the absence of a dispute, a trial court's failure to address the parenting-time factors under MCL 722.27a(6) does not warrant reversal when it is

---

[7] Given this conclusion, we reject plaintiff's reliance on *Vodvarka v Grasmeyer*, 259 Mich App 499; 675 NW2d 847 (2003), for the applicable standard in her brief on appeal. As we explained in *Shade*, 291 Mich App at 25-27,

> the definitions of "proper cause" and "change of circumstances" from *Vodvarka* do not control the facts of this case because this case involves a modification of parenting time rather than a change in custody. . . . If a change in parenting time *results in a change in the established custodial environment*, then the *Vodvarka* framework is appropriate. [Emphasis added.]

[8] MCL 722.27a was amended by 2016 PA 96, effective August 1, 2016. The parenting-time factors are now listed under subsection (7), but the factors themselves are unchanged. The other amendments to the statute are not relevant to the instant case.

"clear from the trial court's statements on the record that the trial court was considering the minor child's best interests in modifying [a party's] parenting time." *Id*. at 32.

After the evidentiary hearing, the referee concluded that the out-of-state parenting time would be in EB's best interest, and the court adopted the referee's recommendation and proposed opinion with minimal alterations that are inconsequential to this issue. In support of his conclusion, the referee articulated limited findings with regard to best-interest factors (a), (b), (e), (j), and (*l*) under MCL 722.23 and parenting-time factor (e) under MCL 722.27a(6), all of which supported his decision to grant out-of-state parenting time to defendant every other month. Our review of the record confirms that these findings were well-supported by the evidence.

On appeal, however, plaintiff raises the following claim with regard to the trial court's best-interest determination: "[Defendant's] history of domestic violence and causal [sic] drug use should have been given greater weight under subsections MCL 722.23(f), (g), and (k) and, likewise, MCL 722.23(e)[9] was not given proper deference." Although plaintiff frames her argument in terms of the weight or deference that was attributed to the aforementioned factors, it is apparent that neither the referee nor the trial court made explicit findings with regard to several of the best-interest and parenting-time factors contested by the parties.[10] The trial court's failure to do so constitutes clear legal error. See *Shade*, 291 Mich App at 31-32; *Pickering*, 268 Mich App at 5.

It is most evident from the record that best-interest factor (k) ("[d]omestic violence, regardless of whether the violence was directed against or witnessed by the child") was specifically contested by the parties,[11] as defendant's previous acts of domestic violence and their potential effect on the child were vigorously disputed. See MCL 722.23(k). Plaintiff and plaintiff's father testified regarding multiple prior instances of domestic violence perpetrated by defendant against plaintiff and defendant's former girlfriend. Krenicky, however, testified that she was aware of the allegations made against defendant, but she stated that had no concerns about domestic violence in her household and implied that the past incidents were nothing more than unsubstantiated allegations. The disputed evidence demonstrates that best-interest factor (k) was a contested issue as to which the court should have articulated a finding before modifying the previous parenting time arrangement. Although the referee's recommendation briefly mentions that "[i]n addition to betraing [sic] the parties' marriage, the [d]efendant has physically

---

[9] Plaintiff provides no further argument with regard to best-interest factor (e). See MCL 722.23(e). Thus, we deem any argument related to this factor abandoned. See *VanderWerp v Plainfield Charter Twp*, 278 Mich App 624, 633; 752 NW2d 479 (2008).

[10] Again, although the trial court was not necessarily required to consider the best interest factors under MCL 722.23 in rendering its parenting time decision, *Shade*, 291 Mich App at 32, the referee expressly considered multiple factors under that statute, and the trial court adopted the referee's best-interest recommendation.

[11] It appears that the parties' dispute on this issue also may have implicated parenting-time factors (d) ("[t]he reasonable likelihood of abuse of a parent resulting from the exercise of parenting time.") and (i) ("[a]ny other relevant factors."). See MCL 722.27a(6)(d), (i).

assaulted the [p]laintiff and allegedly thrown her out of a car," this brief statement does not constitute a finding with regard to defendant's domestic violence as it relates to the child's best interests.

Additionally, the record indicates that the parties contested issues implicating best-interest factor (f), which "relates to a person's fitness *as a parent.*" *Fletcher v Fletcher*, 447 Mich 871, 886-887; 526 NW2d 889 (1994) (emphasis in original); see also MCL 722.23(f). Notably, "questionable conduct is relevant to factor f only if it is a type of conduct that necessarily has a significant influence on how one will function as a parent." *Fletcher*, 447 Mich at 887. "[V]erbal abuse, drinking problems, driving record, physical or sexual abuse of children, and other illegal or offensive behaviors," as well as other things, may be relevant to factor (f). *Id*. at 887 n 6. The parties expressly contested whether defendant abuses marijuana and alcohol and whether he uses these substances in the presence of children. Defendant admitted occasional marijuana use, but he and Krenicky denied that he has any ongoing issues with drugs or alcohol. Plaintiff provided contradictory testimony, describing one instance when defendant "spent the whole day drinking," went to bed drunk, and subsequently "started screaming at [EB]" when she began to cry during the night, "saying [that] he was going to throw her in the garage if she did not shut up." Plaintiff testified that defendant then threatened to "beat [plaintiff's] a--" when she "started crying and asking him to stop yelling at her." According to plaintiff, defendant continued to "berat[e]" her and scream at her until the police arrived. This instance, in conjunction with other incidents recounted my plaintiff, may reveal a potential for alcohol abuse and verbal abuse affecting defendant's functionality as a parent depending on the trial court's credibility determinations. Defendant's prior criminal record was also at issue. Nevertheless, neither the referee nor the trial court made a finding with regard to this contested factor or, relatedly, parenting time factors (c) ("[t]he reasonable likelihood of abuse or neglect of the child during parenting time") and (d) ("[t]he reasonable likelihood of abuse of a parent resulting from the exercise of parenting time"). See MCL 722.27a(6)(c), (d).

Thus, under these circumstances, the trial court committed clear legal error when it failed to make findings on plainly disputed issues. See *Shade*, 291 Mich App at 31-32; *Pickering*, 268 Mich App at 5. The appropriate remedy is to vacate the trial court's parenting time award and remand the case for reevaluation. See *Harvey v Harvey*, 257 Mich App 278, 292; 668 NW2d 187 (2003). On remand, the trial court should reevaluate the contested factors and determine whether, in light of those factors, the modified parenting time schedule remains in EB's best interest. Likewise, because the best interests of a child are always evolving, the court " 'should consider up-to-date information' and 'any other changes in circumstances arising since the trial court's original custody order." ' *Kessler v Kessler*, 295 Mich App 54, 62-63; 811 NW2d 39 (2011) (quotation marks and citation omitted).

Prior to remand, however, we find it necessary to note that we reject the rest of plaintiff's claims on appeal. Plaintiff contends that the court failed to recognize that the extensive travel between Michigan and Pennsylvania is unduly burdensome in light of EB's young age and potentially hazardous in light of the states' harsh winters. However, the referee's recommendation includes a specific finding under MCL 722.27a(6)(e), which addresses the inconvenience or burden that the proposed travel will have on the child. In particular, the referee reasoned that defendant's out-of-state parenting time should be limited to five days every other month because "the length of the drive is arduous, and it is not in the best interests of the minor

child to spend 20 hours in a car each month going back and forth from Michigan to Pennsylvania." The referee's estimation that round-trip travel would be approximately 20 hours is supported by the defendant's testimony and undisputed by plaintiff. The parties discussed the FOC's standard long-distance parenting time recommendation on the record, noting that it suggests five-day visits on a monthly basis. Thus, the referee's decision to reduce the frequency of the visits demonstrates that he took the burden of the required travel into consideration. Moreover, given the considerable testimony from the parties, as well as the neutral KIND employees, indicating that it would be in EB's best interest to have a strong relationship with defendant, her stepmother, and her half-brother, the referee's determination that the benefits of the parenting time modification outweighed the burden of the travel was not against the great weight of the evidence.

Plaintiff also argues on appeal that the court erroneously applied the best-interest factors because it gave inadequate weight to defendant's failure to take advantage of numerous parenting time opportunities. Defendant's failure to attend parenting time with EB was relevant to parenting-time factors (f) ("[w]hether a parent can reasonably be expected to exercise parenting time in accordance with the court order") and (g) ("[w]hether a parent has frequently failed to exercise reasonable parenting time") under MCL 722.27a(6). Although neither the referee nor the trial court cited these factors, the referee's factual findings, which were adopted by the trial court, include numerous references to defendant's failure to attend multiple visits. Thus, it is clear that the referee's recommendation does, in effect, include findings on these contested factors. Additionally, the referee's findings plainly conclude that defendant's failures resulted from plaintiff's efforts to limit his time with the child. Likewise, it is apparent that the referee did not believe that defendant's failure to take advantage of parenting time opportunities weighed against a finding that modification of the parenting time schedule was in the child's best interests. To the contrary, he specifically concluded, with regard to best-interest factor (j), that granting out-of-state parenting time would "minimize [p]laintiff's opportunities to interfere with the [d]efendant's parenting time." Given the conflicting evidence in the record, it is clear that the referee's conclusions were dependent on its credibility determinations. "Special deference is given to the trial court's findings when they are based on the credibility of the witnesses." *Woodington v Shokoohi*, 288 Mich App 352, 355; 792 NW2d 63 (2010). On this record, these findings were not against the great weight of the evidence.

## IV. CONCLUSION

Because the trial court committed clear legal error by failing to make findings concerning several disputed issues, we vacate the trial court's parenting time modification and remand this case for reconsideration of the contested best-interest and parenting-time factors. The rest of plaintiff's claims on appeal do not warrant relief.

Vacated in part and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Jane E. Markey
/s/ Michael J. Riordan

-12-