# STATE OF MICHIGAN

# COURT OF APPEALS

MICHAEL J. RADLER,

        Plaintiff-Appellant/Cross-Appellee,

v

JUDITH M. RADLER,

        Defendant-Appellee/Cross-
        Appellant.

UNPUBLISHED
March 21, 2017

No. 328025
Midland Circuit Court
Family Division
LC No. 09-005486-DO

Before: CAVANAGH, P.J., and SAWYER and SERVITTO, JJ.

PER CURIAM.

Plaintiff appeals, and defendant cross-appeals, from the parties' judgment of divorce. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff filed a complaint for divorce on February 20, 2009. After a three-day trial in February 2010, Judge Jonathan E. Lauderbach issued findings of fact and conclusions of law on May 17, 2010. The court found that the appreciation in value of 330,000 shares of stock that plaintiff owned before the marriage in his family's business, The Radler Group (TRG),[1] as well as 208,616 shares of TRG stock held in two irrevocable trusts in which plaintiff was a beneficiary, became a marital asset in December 2006 when plaintiff became president of TRG and became involved in the active management of the company. The court noted that plaintiff had presented no evidence at trial with respect to the current valuation of the stock. Relying on "the best evidence available," the court found that the appreciation in value of the stock was $4.37 per share. After itemizing and dividing the marital assets, the court awarded the entirety of the stock to plaintiff and awarded defendant the sum of $1,197,906.74 "to equalize the value of

---

[1] The Radler Group is a holding company that holds the stock of six subsidiary corporations. The subsidiary corporations own and rent real estate, including store fronts, industrial properties, and office buildings, in the Chicago area.

-1-

the property being distributed." The court also awarded defendant spousal support in the amount of $4,000 per month for 15 years, less than the amount suggested by the Friend of the Court prognosticator for spousal support, in light of the "approximately $1,300,000 in cash and marketable securities, and being mindful of the income that she should be able to derive therefrom."

Plaintiff's new counsel brought a motion for reconsideration and/or in the alternative for limited reopening of proofs in order to allow the court to review the two trust documents, which had not been admitted at trial. Plaintiff maintained that his interest in the stock was not vested at the time the complaint for divorce was filed or at the time of trial and, therefore, the stock held in trust was not a marital asset. Both parties also requested clarification of the court's findings of fact and conclusions of law on a number of issues. During an August 2011 hearing on the motions for clarification, Judge Lauderbach expressed that he was not comfortable with the value that he placed on the stock due to the lack of valuation evidence at trial and so he appointed an independent expert to perform a valuation of the business. The court provided specific instructions on the scope of the valuation and an evaluation date of February 20, 2009. A hearing to take testimony from the court-appointed expert began on February 27, 2013, before Judge Lauderbach, and concluded during a final hearing on the matters under reconsideration on August 20, 2014, before Judge Michael J. Beale.[2] Judge Beale did not modify Judge Lauderbach's prior decision "as to classification of the Radler Group stock as marital, the date upon which it became marital and the number of shares determined to be marital." Judge Beale accepted the expert's finding that the value of the stock in February 2009 was $4.19 per share and found that the appreciation in value of the stock was $1.45 per share. Judge Beale also did not revisit Judge Lauderbach's decision with respect to the amount and duration of spousal support. However, Judge Beale held that the spousal support obligation would not commence until the judgment of divorce was entered due to the "significant reduction in the marital share of TRG stock." Judge Beale also found no basis to amend or modify Judge Lauderbach's property distribution of the marital estate and the award of a cash payment to defendant to equalize the property distribution. He concluded, however, that an equal split of the marital estate was not fair and equitable:

> [T]he total marital estate, excluding the items equally shared, breaks down in the following fashion: Plaintiff's share is $992,411.74; while Defendant's share is $368,278.50. Applying an equalizing analysis to these numbers would have a cash payment to Defendant in the amount of $312,066.62. This is approximately 75% less than the cash payment calculated by Judge Lauderbach in his original findings of fact. Additionally, the amount of spousal support previously ordered was impacted by the awarding of approximately $1,300,000 in cash and marketable securities to Defendant from Plaintiff. Assuming the assets other than the cash payment remained the same, the total cash and marketable securities going to Defendant is reduced to $312,066.62 + $102,093.26 for a total of $414,159.88.

---

[2] The case was assigned to Judge Beale when Judge Lauderbach resigned.

The Court does not find that an equal split of the marital estate is a fair and equitable resolution, and therefore, chooses to alter the property distribution rather than revisit the issue of spousal support. The Court finds the property awarded to each party, except the items of equal split as decided by Judge Lauderbach, will be given a 40% share to Plaintiff and a 60% share to Defendant. This includes the assets which the Court could not find a marital value, namely Dow Retirement Health Care Assistance Plan and First of America account. The total amount of the marital estate subject to the disproportionate division is $1,360,690.24, therefore Plaintiff should receive $544,276.10 and Defendant should receive $816,414.14. The offsetting cash payment from Plaintiff to Defendant shall be $448,135.64. The Court finds the disparities of potential income and the actions of Plaintiff relating to the contempt of court proceedings warrants the disproportionate division of the martial [sic] estate as noted above. Defendant will continue to receive the spousal support as ordered by Judge Lauderbach; however, the funds otherwise available are substantially lessened due to the business valuation report for the Radler Group Ltd. The Court finds this to be an equitable resolution of the marital estate.

## II. THE 330,000 SHARES OF TRG STOCK

Plaintiff argues that the trial court erred by finding the increase in value of plaintiff's 330,000 shares of TRG stock to be a marital asset. "In a divorce action, this Court reviews for clear error a trial court's factual findings on the division of marital property and whether a particular asset qualifies as marital or separate property." *Hodge v Parks*, 303 Mich App 552, 554–555; 844 NW2d 189 (2014).

When dividing a marital estate, the goal is to make an equitable division of the marital property in light of all the circumstances. *Byington v Byington*, 224 Mich App 103, 114; 568 NW2d 141 (1997). A trial court divides property by first determining whether the contested assets are marital or separate property. *Reeves v Reeves*, 226 Mich App 490, 493-494; 575 NW2d 1 (1997). "Generally, marital property is that which is acquired or earned during the marriage, whereas separate property is that which is obtained or earned before the marriage." *Cunningham v Cunningham*, 289 Mich App 195, 201; 795 NW2d 826 (2010), citing MCL 552.19. The marital estate is generally "divided between the parties, and each party takes away from the marriage that party's own separate estate with no invasion by the other party." *Reeves*, 226 Mich App at 494. A premarital asset's appreciation is considered part of the marital estate "[w]hen one [spouse] significantly assists in the acquisition or growth of [the other] spouse's separate asset . . . ." *Reeves*, 226 Mich App at 495. In contrast, a premarital asset's appreciation should not be considered part of the marital estate if the appreciation is due to "wholly passive" appreciation. See *id.* at 497. A premarital asset increases in value by wholly passive appreciation when there is no addition of capital or active management during the marriage. See *Dart v Dart*, 460 Mich 573, 585 n 6; 597 NW2d 82 (1999).

The trial court did not clearly err by finding that plaintiff's 330,000 shares of TRG stock that had been acquired before the parties' marriage was plaintiff's separate property until December 2006, when the appreciation in value of the stock between December 2006 and

February 20, 2009, became a marital asset. *Hodge,* 303 Mich App at 554–555. There is no dispute that plaintiff became president of TRG's board of directors after his father stepped down from that role in December 2006. Plaintiff sat as one of seven members of the board of directors, which had the responsibility of approving all of the company's major decisions. The board had nine monthly board meetings in 2007 because, according to plaintiff, "suddenly you have a group of largely disinterested people who just have been taking their monthly payments and kind of coming in town every now and then for, you know, a little bit of a free trip, thrown into the prospect of having to run a company." Plaintiff attended nine board meetings between January 2009 and September 2009. Defendant would stay home to take care of the home and the children remaining at home when plaintiff traveled to attend board meetings. Plaintiff also received monthly payments of $4,000 from TRG as salary and expense reimbursement. The evidence supported the trial court's finding that plaintiff took an active role in the management of TRG during the marriage beginning in late December 2006 and that defendant's domestic efforts in managing the home and family affairs allowed plaintiff to actively participate in the company. The trial court did not clearly err in finding that the appreciation in value of the stock became a marital asset subject to equitable division in December 2006 when plaintiff took an active role in managing TRG.

### III. THE 208,616 SHARES OF TRG STOCK HELD IN TRUST

Plaintiff argues that the trial court erred by finding that plaintiff had a divisible interest in the shares of TRG stock held in irrevocable trusts because plaintiff did not have a vested interest in the shares on the date the complaint for divorce was filed. Plaintiff has provided no authority in support of his argument, has provided no citations to the record, and has provided no citation to the trust documents themselves, other than to referring to a "simple reading of each document[]" and a reference to "Exhibit K." "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims . . . nor may he give issues cursory treatment with little or no citation of supporting authority." *Peterson Novelties*, *Inc v Berkley*, 259 Mich App 1, 14; 672 NW2d 351 (2003); see also *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999) ("[W]here a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned."). This issue is abandoned.

### IV. VALUATION OF THE TRG STOCK

Plaintiff argues that the trial court erred by ordering the independent expert to use the investment value as the standard of value in appraising the TRG stock and restricting the expert's ability to value the company using the fair market value standard of value. The trial court did not, however, restrict the expert from offering testimony and an opinion using fair market value as the standard of value.[3] The true gist of plaintiff's argument is that Judge Beale erred in his

---

[3] The expert testified that the difference between the investment value and the fair market value standard of value is that the fair market value standard allows discounts for lack of control and lack of marketability.

valuation of The Radler Group because the expert testified that he would have applied a fair market value standard of value and applied discounts if he had been appraising the company under Illinois family and divorce law. However, there is no one set, uniform method for valuing a closely held corporation. See, e.g., *Kowalesky v Kowalesky*, 148 Mich App 148, 156; 384 NW2d 112 (1986). Indeed, the expert testified that the method of valuing business assets in a divorce case varies from state to state.

A trial court's valuation of an asset is a finding of fact reviewed for clear error. *Jansen v Jansen*, 205 Mich App 169, 171; 517 NW2d 275 (1994). With respect to business valuations in divorce actions, a trial court has great latitude in determining the value of stock in closely held corporations, and where a trial court's valuation of a marital asset is within the range established by the proofs, no clear error is present. *Jansen*, 205 Mich App at 170–171. The expert offered testimony and an opinion regarding the valuation of the TRG stock using the investment value standard of value. Judge Beal's valuation of the TRG stock was within the range established by the proofs and was not clearly erroneous.

Defendant argues on cross-appeal that the trial court erred by reopening proofs and appointing the independent expert. This Court reviews for an abuse of discretion a trial court's decision whether to reopen proofs. *Mixon v Mixon*, 237 Mich App 159, 163; 602 NW2d 406 (1999).

Trial courts are required by court rule to include a determination of the property rights of the parties in the judgment of divorce. MCR 3.211(B); *Yeo v Yeo*, 214 Mich App 598, 601; 543 NW2d 62 (1995). "As a prelude to this property division, a trial court must first make specific findings regarding the value of the property being awarded in the judgment." *Olson v Olson*, 256 Mich App 619, 627; 671 NW2d 64 (2003). A trial court is required to assign a value to marital property even if neither party submitted "persuasive evidence" regarding its value. In *Olson*, this Court noted that there are numerous ways in which a trial court can make such a valuation, including valuation based on expert testimony, valuation based on lay testimony, or the trial court's appointment of "its own independent expert to provide it with a perhaps more objective valuation." *Id*. at 627 n 4.

Here, after making findings of fact and conclusions of law, and after the parties filed motions for reconsideration and for limited reopening of proofs, but before a judgment of divorce was entered, Judge Lauderbach sua sponte determined that the proofs on the issue of stock valuation were deficient and that he did not have sufficient evidence to make a determination regarding that value of the stock so as to allow him to make an equitable distribution of marital property. Without citation to authority, defendant argues that Judge Lauderbach erred by reopening proofs and appointing an independent expert to value the stock. A party's failure to cite supporting authority in favor of an assertion of error constitutes an abandonment of the issue. *Prince*, 237 Mich App at 197. Nonetheless, Judge Lauderbach indicated that he did not have ample information to determine a fair value and, therefore, appointed an independent expert to assist the court. See *Steckley v Steckley*, 185 Mich App 19, 23; 460 NW2d 255 (1990). In light of the court's duty to value marital property and to determine an equitable distribution of the property, defendant has failed to demonstrate that the trial court abused its discretion by appointing an expert witness to assist the court in making such determinations. Although defendant challenges the credibility of the expert, it was for the court

to judge the credibility of the expert and determine the weight to be given to the evidence presented. *SSC Assoc Ltd Partnership v Gen Retirement Sys of the City of Detroit*, 210 Mich App 449, 452; 534 NW2d 160 (1995).

## V. JOINT TAX RETURNS

Plaintiff argues that Judge Lauderbach lacked authority to order him to file amended joint tax returns for tax years 2010 and 2011. Plaintiff has not cited any Michigan law for the proposition that a trial court lacks authority to order parties to file joint tax returns while the parties are still married. A party's failure to cite supporting authority in favor of an assertion of error constitutes abandonment of the issue. *Prince*, 237 Mich App at 197. We consider this issue abandoned. We also conclude that Judge Lauderbach did not clearly err by ordering the filing of joint amended tax returns.

## VI. EQUITABLE DISTRIBUTION OF MARITAL ASSETS

Plaintiff argues that Judge Beale did not have jurisdiction to revisit Judge Lauderbach's finding that the marital assets should be equally divided. Plaintiff has not cited any authority in support of his argument that a trial court cannot modify the distribution of marital assets in order to reach an equitable distribution in light of all of the circumstances prior to entry of the judgment of divorce. We consider this issue abandoned. *Prince*, 237 Mich App at 197. We further conclude that the distribution of the marital property was not inequitable.

## VII. SPOUSAL SUPPORT

Plaintiff argues that the trial court erred by ordering that the spousal support award would be effective with the entry of the judgment of divorce. Plaintiff has abandoned this issue by failing to cite any authority in support of his assertion that Judge Beale had no authority to order that the award be effective with the entry of the judgment. *Prince*, 237 Mich App at 197. We further conclude that Judge Beale did not abuse his discretion when he ruled the award would be effective with the entry of divorce.

## VIII. ATTORNEY FEES

On cross-appeal, defendant argues that the trial court abused its discretion by denying her request for attorney fees. This Court generally reviews a trial court's decision whether to award attorney fees in a divorce action for an abuse of discretion. *Richards v Richards*, 310 Mich App 683, 699; 874 NW2d 704 (2015). Findings of fact on which the trial court bases an award of attorney fees are reviewed for clear error. *Id*. at 699-700.

In a divorce action, attorney fees are "awarded only as necessary to enable a party to prosecute or defend a suit but are also authorized when the requesting party has been forced to incur expenses as a result of the other party's unreasonable conduct in the course of litigation." *Richards,* 310 Mich App at 700 (internal quotation marks omitted). As such, "MCR 3.206(C)(2) provides two independent bases for awarding attorney fees and expenses . . . . Whereas MCR 3.206(C)(2)(a) allows payment of attorney fees based on one party's inability to pay and the

other party's ability to do so, MCR 3.206(C)(2)(b) considers only a party's behavior, without reference to the ability to pay." *Richards*, 310 Mich App at 700-701.

Defendant cites generally MCR 3.206(C), *Richards*, 310 Mich App at 683, and *Cassidy v Cassidy*, ___ Mich App ___; ___ NW2d ___ (2017), but she offers no argument or analysis, and fails to apply the law to the facts, in support of her assertion that the trial court erred by denying her request for attorney fees. Defendant merely announces, in a conclusory fashion with record citation only to the statement of facts in her brief on appeal, that she is *entitled* to an award of attorney fees and tells this Court to agree. That is insufficient to warrant this Court's review because "[a]n appellant may not merely announce a position then leave it to this Court to discover and rationalize the basis for the appellant's claims." *Cheesman v Williams*, 311 Mich App 147, 161; 874 NW2d 385 (2015).

Affirmed. No costs, neither party having prevailed in full.

/s/ Mark J. Cavanagh
/s/ David H. Sawyer
/s/ Deborah A. Servitto

-7-