*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* GROSNICKLE, Minors.

UNPUBLISHED
August 5, 2021

No. 355483
Macomb Circuit Court
Family Division
LC No. 2019-000068-NA

Before: TUKEL, P.J., and SAWYER and CAMERON, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to her minor children, NG and LG, pursuant to MCL 712A.19b(3)(b)(*ii*), (g), and (j). She argues that the trial court's procedures were improper; she additionally argues that, on the merits, the trial court erred by terminating her parental rights to the children. We disagree and affirm the trial court's order terminating respondent's parental rights to the children.

## I. UNDERLYING FACTS

Respondent learned, while she was pregnant with NG, that her then-husband, J. Grosnickle, was a registered sex offender. Respondent nevertheless chose to stay with J. Grosnickle even after NG was born. J. Grosnickle eventually sexually abused NG while NG was still a toddler; Children's Protective Services (CPS) took custody of the children and sought, in its initial petition, to terminate respondent's parental rights to them. Throughout the proceedings NG exhibited concerning behavioral issues and was diagnosed with post traumatic stress disorder (PTSD); LG's behavior was less of a concern. The trial court combined the adjudication and disposition phases of this case and, at the conclusion of those hearings, took jurisdiction over the children (the adjudication phase) and terminated respondent's parental rights to them (the dispositional phase). This appeal followed.

## II. COMBINED INITIAL DISPOSITION AND ADJUDICATION HEARINGS

Respondent argues that the trial court erred by combining the adjudicative and dispositional phases of the proceedings in this case. Specifically, she argues that the trial court's procedural irregularities made it impossible to discern whether the trial court relied on legally admissible evidence and applied the proper burden of proof when considering whether the children came

within the trial court's jurisdiction. We agree that the trial court erred by doing so, but conclude that respondent is not entitled to relief on this issue because she failed to show that it prejudiced her in any way.

## A. PRESERVATION AND STANDARD OF REVIEW

A respondent must object at the trial court level to preserve a challenge "to the procedure employed by the trial court." *In re Mota,* ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 351830); slip op at 5. Respondent failed to do so. Thus, the issue is unpreserved.

Unpreserved issues are reviewed for plain error. *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. (quotation marks omitted), citing *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App 1, 8-9; 761 NW2d 253 (2008). The appellant bears the burden of persuasion with respect to prejudice. See *Carines*, 460 Mich at 763 ("It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice.") (quotation marks and citation omitted).

## B. ANALYSIS

"In Michigan, child protective proceedings comprise two phases: the adjudicative phase and the dispositional phase." *In re Sanders,* 495 Mich 394, 404; 852 NW2d 524 (2014). During the adjudicative phase, the trial court determines whether to take jurisdiction of the child. *Id.* The trial court can exercise jurisdiction if the petitioner proves allegations in the petition at a trial or if a respondent-parent enters a plea of admission or no contest to the allegations. *In re Ferranti*, 504 Mich 1, 15; 934 NW2d 610 (2019). If a trial is held regarding adjudication, the rules of evidence for civil proceedings apply, and the burden of proof is a preponderance of the evidence. *In re AMAC,* 269 Mich App 533, 536; 711 NW2d 426 (2006). By contrast, "[t]he dispositional phase involves a determination of what action, if any, will be taken on behalf of the child." *Id.* at 537. "Termination of parental rights may be ordered at the initial dispositional hearing." *Id.*, citing MCR 3.977(E) and MCL 712A.19b(4). MCR 3.977(E) governs termination of parental rights at the initial disposition. This court rule provides:

> The court shall order termination of the parental rights of a respondent at the initial dispositional hearing held pursuant to MCR 3.973, and shall order that additional efforts for reunification of the child with the respondent shall not be made, if
>
> > (1) the original, or amended, petition contains a request for termination;
> >
> > (2) at the trial or plea proceedings, the trier of fact finds by a preponderance of the evidence that one or more of the grounds for assumption of jurisdiction over the child under MCL 712A.2(b) have been established;

(3) at the initial disposition hearing, the court finds on the basis of clear and convincing legally admissible evidence that had been introduced at the trial or plea proceedings, or that is introduced at the dispositional hearing, that one or more facts alleged in the petition:

(a) are true, and

(b) establish grounds for termination of parental rights under MCL 712A.19b(3)(a), (b), (d), (e), (f), (g), (h), (i), (j), (k), (*l*), or (m);

(4) termination of parental rights is in the child's best interests.

Recently, in *In re Mota*, this Court addressed the identical issue presented in this appeal: the propriety of combining the adjudication trial and the initial disposition hearing. This Court held that "[t]he language of MCR 3.977(E) clearly envisions or contemplates two separate proceedings—a trial or plea relative to adjudication *and* a dispositional hearing for purposes of termination." *In re Mota*, ___ Mich App at ___; slip op at 7. The Court then explained the procedure to be followed when termination is sought at the initial dispositional hearing:

> Reading MCR 3.973(A), (B), and (C) in conjunction with MCR 3.977(E)(3), we conclude that the following described process honors the intent of the court rules promulgated by our Supreme Court and applies when an adjudication trial is conducted and the DHHS requests termination at the initial dispositional hearing under circumstances such as those posed in this case. First, an adjudication trial is to be conducted with the court allowing the introduction of legally admissible evidence that is relevant to the exercise of jurisdiction under MCL 712A.2(b). At the conclusion of the adjudication trial, the court, in a bench trial, is to determine whether the DHHS established by a preponderance of the evidence a basis for jurisdiction under MCL 712A.2(b). If jurisdiction is not established, the proceeding is, of course, concluded. If the trial court finds that it has jurisdiction, the dispositional hearing in which termination is sought may immediately be commenced. At the termination hearing, the trial court, in rendering its termination decision under MCL 712A.19b, may take into consideration any evidence that had been properly introduced and admitted at the adjudication trial, MCR 3.977(E), along with any additional relevant and material evidence that is received by the court at the termination hearing, MCR 3.977(H)(2). [*In re Mota,* ___ Mich App at ___; slip op at 8 (footnote omitted).]

In this case, as in *In re Mota*, with respect to the presentation of the evidence, the trial court did not separate the adjudication trial from the dispositional hearing. Moreover, the trial court then proceeded to issue rulings regarding jurisdiction and termination after all the proofs were offered. Accordingly, by bifurcating the adjudication trial and dispositional hearing, the trial court's failure to comply with the provision of the court rules constituted plain error because the error which occurred was clear and obvious. See *In re Mota,* ___ Mich App at ___; slip op at 9. Although plain error occurred, relief is not warranted because respondent cannot demonstrate that the trial court's procedural error affected her substantial rights or the integrity, fairness, or public reputation of the proceedings. See *id*.

It is clear from the record that the trial court adjudicated respondent and found statutory grounds for termination on the basis of legally admissible evidence. The record establishes that any hearsay that was admitted was identified and considered by the trial court for best-interest purposes only. During the lengthy hearing, the trial court made it clear that it understood that certain evidence was being offered for best-interest purposes only and it understood the significance of hearsay during the combined proceedings. Further, when certain witnesses were called out of order for best-interest purposes only, this was made clear before any testimony was elicited. More compellingly, for purposes of adjudication, the trial court delineated what evidence it relied on. In particular, the trial court noted that admissions by both respondent and J. Grosnickle—the children's legal father—established the allegations in the petition.[1] Further, respondent does not identify any evidence relied on by the trial court that may have been permissible to consider in one phase, but not in the other. The trial court relied on legally admissible evidence to determine that J. Grosnickle sexually abused NG, and that respondent had the opportunity to protect her child, yet failed to do so. This factual finding was used to support both the trial court's exercise of jurisdiction and the existence of grounds for termination. Accordingly, while the trial court erred procedurally by combining the adjudicative and dispositional phases, respondent has failed to demonstrate that the error affected her substantial rights or called into question the fairness, integrity, or public reputation of the judicial proceedings. Consequently, despite the trial court's error, respondent is not entitled to relief on this issue.

## III. STATUTORY GROUNDS

Next, respondent asserts that the trial court clearly erred when it found statutory grounds to terminate her parental rights. We disagree.

## A. STANDARD OF REVIEW

This Court "reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709-710; 846 NW2d 61 (2014). To be clearly erroneous, a trial court's determination must be more than possibly or probably incorrect. *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *Id*. Finally, this Court must consider "the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *Id*.

## B. ANALYSIS

"Only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, even if the court erroneously found sufficient evidence under other statutory grounds." *In re Ellis*, 294 Mich App at 32. In relevant part, MCL

---

[1] J. Grosnickle voluntarily relinquished his parental rights to the children. Consequently, he is not a party to this appeal.

712A.19b(3) authorizes a trial court to terminate parental rights if it finds by clear and convincing evidence that any of the following exist:

> (b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:
>
> * * *
>
> > (*ii*) The parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home.
>
> * * *
>
> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.
>
> * * *
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The trial court found, by clear and convincing evidence, three statutory grounds for terminating respondents' parental rights: MCL 712A.19b(3)(b)(*ii*), (g), and (j). There was legally admissible clear and convincing evidence from which the trial court could conclude that J. Grosnickle sexually assaulted NG. Respondent admitted that she saw J. Grosnickle touching NG's penis in an inappropriate manner of a sexual nature. She described to the police that she saw J. Grosnickle's hand wrapped around the child's penis, and that it was moving up and down. Consistently with this account, J. Grosnickle admitted that he taught NG how to masturbate. Although there is no evidence that J. Grosnickle sexually abused NG's younger sibling, LG, this is not dispositive because "[h]ow a parent treats one child is certainly probative of how that parent may treat other children." *In re AH,* 245 Mich App 77, 84; 627 NW2d 33 (2001).

Further, there was clear and convincing evidence that respondent had the opportunity to prevent the sexual abuse and failed to do so. During her pregnancy with NG, respondent discovered that J. Grosnickle was a convicted sex offender. She was told that he had sexually assaulted a one-year-old relative. Respondent found this information distressing enough that she contacted the police to inquire whether J. Grosnickle could have contact with his own children. Later, on two occasions, respondent discovered J. Grosnickle alone with NG in a locked room. On these occasions, NG was screaming and crying. Respondent admitted that she found J. Grosnickle's explanations for why the door was locked to be suspicious. Despite having knowledge of J. Grosnickle's predilection and suspicious behavior, respondent left NG in J. Grosnickle's care on more than one occasion. Although respondent and her children sometimes

briefly moved out of the home they shared with J. Grosnickle, respondent repeatedly returned despite knowing the risks to her children.

There also was clear and convincing evidence that the children would suffer injury or abuse in the foreseeable future if placed in respondent's home. The best evidence provided to the trial court to evaluate whether a reasonable likelihood existed that the children would suffer injury was her past acts. Respondent's actions demonstrated that she lacked the ability to appreciate risks of harm to her own children. Indeed, she allowed her children to be alone with a known pedophile. Following one of the occasions that she found NG locked in a room with J. Grosnickle, it took prompting by the paternal grandmother for respondent to check NG for injuries. Respondent also never reported J. Grosnickle's sexual abuse of NG to authorities. When the abuse came to light, respondent initially lied to the police about seeing J. Grosnickle sexually abuse her son. Further, respondent minimized and failed to appreciate the significance of the abuse. At a family team meeting, while J. Grosnickle was admitting to "masturbating" NG, respondent was heard giggling and laughing. Respondent also knew that J. Grosnickle was incarcerated for a second-degree criminal sexual conduct conviction, but she did not investigate who the victim was or know if criminal charges were being pursued against J. Grosnickle for his abuse of their son, NG.

Moreover, respondent exercised extremely poor judgment and failed to recognize appropriate boundaries with her children. Respondent admitted that she and J. Grosnickle had sex while NG was in the room and watching their actions. When she discovered that he was watching, respondent thought it was appropriate to give NG a cell phone or tablet to distract him. Respondent also had sex with another man while NG watched. She testified that on occasion she thought about the impropriety of having sex in front of her child, but respondent could not explain why she did not refrain from doing so. Not only did respondent exercise poor judgment in actions directly related to her children, but in other aspects of her life as well. For example, she admitted that she had sex with J. Grosnickle's father in exchange for housing. Indeed, respondent suspected that her daughter, LG, was actually fathered by her father-in-law.

Respondent's conduct demonstrated that she lacked the ability to recognize a risk of harm to her children and to act in a manner that would protect them from danger. Indeed, the evidence established that respondent placed her desires above the needs of her children and that she would likely continue to place her interests over her children's welfare. It was reasonable to conclude that respondent would likely place her children in danger again if they were returned to her care. Accordingly, the trial court did not clearly err when it found by clear and convincing evidence that termination was warranted under MCL 712A.19b(3)(b)(*ii*), (g), and (j).

## IV. REASONABLE EFFORTS

In a cursory manner, with no meaningful analysis, respondent argues that petitioner failed to make reasonable efforts toward reunification. She asserts that because there were no aggravating circumstances, reasonable efforts at reunification were required to address the barriers to reunification. Respondent failed to include her reasonable efforts argument in her statement of questions presented and, therefore, she has waived the issue. See *English v Blue Cross Blue Shield of Mich*, 263 Mich App 449, 459; 688 NW2d 523 (2004) ("An issue not contained in the statement of questions presented is waived on appeal."); MCR 7.212(C)(5) (requiring appellants to state their arguments in their statement of questions involved).

Furthermore, even if respondent had not waived the issue we would consider it abandoned because respondent failed to sufficiently address the issue in her brief on appeal. Respondent's reasonable efforts argument, in its entirety, is as follows:

> Reasonable efforts towards reunification of child and family must be made in all cases. _In re Mason_, 486 Mich 142,152; 782 NW2d 747 (2010)[.] The only exception is if the court finds aggravating circumstances. Even if this court is left with the opinion that the mother contributed to the sexual abuse of Nathan by failing to protect him, this fact alone does not rise to the level of being aggravating. The mother should have been provided services and there should have not been a termination at the Initial Disposition.

Respondent failed to articulate what services she believes she should have been offered, the applicable legal standard for a reasonable efforts argument, or to even address how she was prejudiced by the trial court's alleged failure to make reasonable efforts to reunify her with the children. As such, the issue is abandoned. See _Cheesman v Williams_, 311 Mich App 147, 161; 874 NW2d 385 (2015) ("An appellant may not merely announce a position then leave it to this Court to discover and rationalize the basis for the appellant's claims; nor may an appellant give an issue only cursory treatment with little or no citation of authority."). We decline to address this issue further.

## V. BEST INTERESTS

Next, respondent argues that the trial court erred by finding that termination of her parental rights was in the children's best interests. We disagree.

### A. STANDARD OF REVIEW

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." _In re Olive/Metts Minors_, 297 Mich App 35, 40-41; 823 NW2d 144 (2012). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." _In re Moss_, 301 Mich App 76, 90; 836 NW2d 182 (2013). The trial court's ruling regarding best interests are reviewed for clear error. _In re Schadler_, 315 Mich App 406, 408; 890 NW2d 676 (2016).

### B. ANALYSIS

"The trial court should weigh all the evidence available to determine the children's best interests." _In re White_, 303 Mich App at 713. In considering the child's best interests, the trial court's focus must be on the child and not the parent. _In re Moss_, 301 Mich App at 87. "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." _In re Olive/Metts_, 297 Mich App at 41-42 (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." _In re_

*White*, 303 Mich App at 714. When the trial court makes its best interests-determination, it may rely upon evidence in the entire record, including the evidence establishing the statutory grounds for termination. *In re Trejo*, 462 Mich 341, 353-354; 612 NW2d 407 (2000), superseded by statute on other grounds as recognized in *In re Moss*, 301 Mich App at 83. In cases concerned with multiple children, the trial court must determine each child's interests individually. *In re Olive/Metts*, 297 Mich App at 43-44. But a trial court is not required to make individual and redundant best-interest findings for each child when the best interests of the children do not significantly differ. *In re White*, 303 Mich App at 715-716.

The trial court did not clearly err when it found that termination of respondent's parental rights was the children's best interests. The record clearly established that NG and LG would not be safe in respondent's care. When she had the opportunity to do so, she failed to protect NG from sexual abuse perpetrated by J. Grosnickle. Additionally, respondent exercised extremely questionable judgment and she exceeded appropriate boundaries when she had sex, on multiple occasions, despite knowing that NG was watching. The trial court's conclusion that the children would be at risk of harm in respondent's care is supported by a preponderance of the evidence.

The testimony also established that virtually no bond existed between respondent and NG, although a bond did exist between respondent and LG. Nonetheless, the trial court correctly concluded that any bond between respondent and the children was outweighed by the children's need to be in a safe and stable environment. NG was diagnosed with PTSD, and he had extreme behavioral issues. Although both children deserved to be raised in a safe and loving home, NG, in particular, required a home where an adult could manage his extremely volatile behavior. The testimony of the caseworkers and the Infant Mental Health (IMH) specialist confirmed that respondent would be unable to safely parent a child with special needs of this nature. This evidence was also relevant to LG because she recently had been mimicking NG's behavioral issues.

At the time of termination, LG was doing well in her foster home. While NG continued to struggle, his behavior was improving. Neither foster parent had yet to commit fully to an adoption plan, but each willingly agreed to provide long term for the child for whom that parent was caring.[2] Consequently, the children were in placements that provided them with the best avenue to achieve stability and permanence. Moreover, termination of respondent's parental rights would provide NG, in particular, with the finality he would need to work through the trauma caused by J. Grosnickle sexually abusing him.

Considering the testimony presented, committed no error when it found that termination of respondent's parental rights was in the children's best interests.

## VI. DUE PROCESS

Respondent argues that she was denied due process when, after suspending her parenting time with NG in September 2019, the referee failed to advise her of her right to appeal that

---

[2] NG and LG were in separate placements due to concerns regarding NG's behavior towards LG.

decision. Respondent does not challenge the suspension of her parenting time, simply the referee's failure to advise her of her appellate rights. We find no error that would warrant any relief.

## A. STANDARD OF REVIEW

"Generally, whether child protective proceedings complied with a respondent's substantive and procedural due process rights is a question of law that this Court reviews de novo." *In re TK,* 306 Mich App 698, 703; 859 NW2d 208 (2014).

## B. ANALYSIS

As explained in *In re TK,* 306 Mich App at 706:

> It is axiomatic that a parent has a fundamental liberty interest in the care, custody, and management of his or her child, which is constitutionally protected. "Both the Michigan Constitution and the United States Constitution preclude the government from depriving a person of life, liberty, or property without due process of law."

> There are two types of due process: procedural and substantive. Procedural due process requires notice and a meaningful opportunity to be heard before an impartial decision-maker. The essence of a substantive due process claim is the arbitrary deprivation of liberty or property interests. Ultimately, due process requires fundamental fairness. [Citations omitted.]

MCR 3.913(C) provides that during a hearing held by a referee, "the referee must inform the parties of the right to file a request for review of the referee's recommended findings and conclusions as provided in MCR 3.991(B)." At the September 9, 2019 hearing, the referee recommended suspension of respondent's parenting time. It is undisputed that at the end of this hearing, the referee did not advise respondent of her right to seek judicial review of his decision to suspend respondent's parenting time. We note, however, that on February 10, 2020, the parties appeared for a continuation of the combined hearing. At that time, respondent was present and requested that the matter be adjourned because of an emergency in her family. The referee granted the adjournment. Before the hearing concluded, however, respondent, again requested that parenting time with NG resume. The referee denied the request. At the conclusion of the hearing, the referee advised respondent of her appellate rights:

> *The Court*: You do have the right to request a review of this Recommended Order with the Circuit Court within seven days. You have a right to appeal this Order to the Court of Appeals directly if you don't agree. You're entitled to (indiscernible), to production of transcripts if you don't agree. You can – and they will be given to you for that appeal. If you do not appeal this decision today you may be waiving your ability to appeal it later.

> If you're requesting appointment of counsel for this process you can do so next door, do you understand?

> Is that a yes?

*[Respondent]*:  Yes.

In the eight months that followed the February 10, 2020 hearing, despite being advised of her right to judicial review, respondent never sought review of the referee's suspension of her parenting time.  Consequently, she was not denied her right to due process.  See *In re TK*, 306 Mich App at 706.  Further, considering the basis upon which the referee suspended parenting time, and his frequent review of the matter and a willingness to seek and consider the opinions of the caseworker, the IMH therapist, and the individual counselor, we do not believe there is a reasonable possibility that the trial judge would have decided the issue differently upon a proper request by respondent for judicial review.

## VII.  CONCLUSION

We affirm the trial court's order terminating respondent's parental rights to the children for the reasons stated in this opinion.

/s/ Jonathan Tukel
/s/ David H. Sawyer
/s/ Thomas C. Cameron