# STATE OF MICHIGAN

# COURT OF APPEALS

KYLE CHEESMAN,

Plaintiff-Appellant,

v

DANILIA THERESA WILLIAMS,

Defendant-Appellee.

FOR PUBLICATION
June 18, 2015
9:00 a.m.

No. 320446
Wayne Circuit Court
Family Division
LC No. 13-109854-DC

Before: MARKEY, P.J., and OWENS and GLEICHER, JJ.

PER CURIAM.

Plaintiff appeals by right an order dismissing this child custody case. The issues raised on appeal relate to a previous order wherein the trial court declined to exercise jurisdiction over the instant case. We reverse and remand for further proceedings consistent with this opinion.

This case arises out of a custody dispute involving KC, who was born to plaintiff and defendant on June 11, 2003. The parties were never married, but plaintiff and defendant executed an affidavit of parentage on June 13, 2003, listed plaintiff's name on KC's birth certificate, and continuously held out KC as plaintiff's daughter. KC "lived jointly between" plaintiff and defendant until 2009, when defendant was incarcerated. After defendant's release, KC remained in Detroit, Michigan, until 2011, when she moved to Ohio with defendant. Between 2011 and 2013, KC moved from Ohio to Georgia and back to Ohio with defendant, but she visited plaintiff in Michigan during the summer and school breaks. It appears that the trial court dismissed this case based on its conclusion that Michigan did not have jurisdiction, and, even if did, Michigan constituted an inconvenient forum.

Plaintiff first argues on appeal that the trial court abused its discretion when it failed to exercise jurisdiction under the Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA), MCL 722.1101 *et seq.* We agree, but only to the extent that we conclude that the trial court failed to fully consider whether it had jurisdiction under the UCCJEA.

Absent a factual dispute, this Court reviews de novo, as a question of law, whether a trial court has jurisdiction under the UCCJEA. *Foster v Wolkowitz*, 486 Mich 356, 362; 785 NW2d 59 (2010). But even if a court may exercise jurisdiction under the UCCJEA, the decision do so is "within the discretion of the trial court and [will] not be reversed absent an abuse of that discretion." *Nash v Salter*, 280 Mich App 104, 108; 760 NW2d 612 (2008)(citation omitted).

-1-

"Generally, an appellate court should defer to the trial court's judgment, and if the trial court's decision results in an outcome within the range of principled outcomes, it has not abused its discretion." *Jamil v Jahan*, 280 Mich App 92, 100; 760 NW2d 266 (2008). Additionally, "[t]he clear legal error standard applies where the trial court errs in its choice, interpretation, or application of the existing law." *Foskett v Foskett*, 247 Mich App 1, 4-5; 634 NW2d 363 (2001). This Court reviews issues of statutory construction de novo. *Nash*, 280 Mich App at 108.

The UCCJEA, MCL 722.1101 *et seq.*, "prescribes the powers and duties of the court in a child-custody proceeding involving [Michigan] and a proceeding or party outside of this state." *Fisher v Belcher*, 269 Mich App 247, 260; 713 NW2d 6 (2005). Because it is undisputed that defendant resides outside of Michigan, this case requires the interpretation and application of the UCCJEA. This Court previously summarized rules of statutory interpretation in a case in which it interpreted the jurisdictional provisions of the UCCJEA:

> The primary goal of statutory interpretation is to give effect to the intent of the Legislature. This determination is accomplished by examining the plain language of the statute itself. If the statutory language is unambiguous, appellate courts presume that the Legislature intended the meaning plainly expressed and further judicial construction is neither permitted nor required. Under the plain-meaning rule, courts must give the ordinary and accepted meaning to the mandatory word "shall" and the permissive word "may" unless to do so would frustrate the legislative intent as evidenced by other statutory language or by reading the statute as a whole. [*Atchison v Atchison*, 256 Mich App 531, 535; 664 NW2d 249 (2003) (citations omitted).]

MCL 722.1201(1) is the "exclusive jurisdictional basis for making a child-custody determination by a court of this state." MCL 722.1201(2). MCL 722.1201(1) provides:

> (1) Except as otherwise provided in section 204, [which concerns temporary emergency jurisdiction,] a court of this state has jurisdiction to make an initial child-custody determination only in the following situations:
>
> (a) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within 6 months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state.
>
> (b) A court of another state does not have jurisdiction under subdivision (a), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under section 207 or 208, and the court finds both of the following:
>
>> (*i*) The child and the child's parents, or the child and at least 1 parent or a person acting as a parent, have a significant connection with this state other than mere physical presence.
>>
>> (*ii*) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.

(c) All courts having jurisdiction under subdivision (a) or (b) have declined to exercise jurisdiction on the grounds that a court of this state is the more appropriate forum to determine the custody of the child under section 207 or 208.

(d) No court of another state would have jurisdiction under subdivision (a), (b), or (c).

Additionally, "[p]hysical presence of, or personal jurisdiction over, a party or a child is neither necessary nor sufficient to make a child-custody determination." MCL 722.1201(3).

At the settlement conference, the trial court appeared to conclude that it did not have jurisdiction over the case on the sole basis that Michigan was not KC's "home state" as defined in MCL 722.1102(g). Likewise, as both parties agree, it is evident that the trial court could not exercise jurisdiction over this case pursuant to MCL 722.1201(1)(a), as Michigan was not the "home state" of KC on the date of the commencement of the proceeding or within six months before the commencement of the action. "Home state" is defined as follows:

[T]he state in which a child lived with a parent or a person acting as a parent for at least 6 consecutive months immediately before the commencement of a child-custody proceeding. . . . A period of temporary absence of a parent or person acting as a parent is included as part of the period. [MCL 722.1102(g).]

"Commencement" is defined as "the filing of the first pleading in a proceeding." MCL 772.1102(e). The complaint, which was the first pleading filed in this child custody proceeding, was filed on August 19, 2013, so the relevant six-month period is between February 19, 2013 and August 19, 2013. According to the residency timelines provided in the pleadings and briefs submitted by both parties and defendant's statements on the record at the settlement conference hearing, KC resided in Michigan until 2011 and resided in either Ohio or Georgia at least between December 2011 and June 2013, although the parties dispute the dates on which defendant and KC moved from state to state. Likewise, both parties acknowledge that KC was physically present in Michigan when plaintiff filed his complaint on August 19, 2013. Thus, because KC did not live in Michigan for at least six consecutive months before the filing of the complaint on August 19, 2013, and Michigan was not KC's home state within six months before the filing of the complaint, the trial court could not exercise jurisdiction over the case pursuant to MCL 722.1201(1)(a). See *Nash*, 280 Mich at 110-111.

Nonetheless, the trial court failed to consider whether it had jurisdiction over the case pursuant to any of the other sources of jurisdiction under MCL 722.1201(1), despite the fact that plaintiff argued in the trial court that the court should exercise jurisdiction pursuant to MCL 772.1201(1)(b) or MCL 772.1201(1)(d).[1] Although this Court may review de novo whether a

---

[1] We note that the trial court could not have jurisdiction under MCL 722.1201(1)(c), as both parties acknowledge that no other custody proceeding regarding KC has been initiated in another

trial court has jurisdiction under the UCCJEA when there are no factual disputes, *Foster*, 486 Mich at 362, the parties dispute (1) the length of time during which KC lived in Ohio and Georgia, (2) the state with which KC has the strongest relationship, and (3) the state in which the most evidence regarding KC is located.

Nevertheless, despite the conflicting dates, it appears that neither Ohio nor Georgia could exercise "home state" jurisdiction under MCL 722.1201(1)(a). According to the timelines provided by the parties, KC had not resided in Ohio for at least six consecutive months immediately before the complaint was filed and had not resided in Ohio for a consecutive six-month period that ended within the six months before the complaint was filed. Additionally, even if we assume that KC did, in fact, live in Georgia for six consecutive months based on some of the timelines the parties provided, it is undisputed that neither defendant nor KC continued to live in Georgia after April 2013. The fact that neither Ohio, Georgia, or any other state, could exercise home state jurisdiction under MCL 722.1201(1)(a) would fulfill the first part of MCL 722.1201(1)(b). But despite the fact that the first part of MCL 722.1201(1)(b) may be satisfied, the trial court did not consider any evidence regarding the factors that comprise the second part of MCL 722.1201(1)(b), i.e., (*i*) whether KC and plaintiff had a "significant connection" with Michigan other than mere presence and (*ii*) whether substantial evidence is available in Michigan concerning KC's care, protection, training, and personal relationships. Instead, it appears that the trial court only considered where defendant and KC had lived and *defendant's* ties to Ohio in making its determination. Additionally, the record does not include any evidence—apart from the parties' conclusory assertions in their briefs—regarding whether plaintiff and KC have a significant connection with Michigan and whether more evidence is available in Michigan, as opposed to Ohio or Georgia, concerning KC. MCL 722.1201(b)(*i*)-(*ii*). In fact, given this Court's construction of "significant connection," i.e., "where one parent resides in the state, maintains a meaningful relationship with the child, and, in maintaining the relationship, exercises parenting time in the state," *White v Harrison-White*, 280 Mich App 383, 394; 760 NW2d 691 (2008), and the parties' characterization of plaintiff's relationship with KC, which included an ongoing relationship and parenting time in Michigan, it appears that it would have been especially important for the trial court to consider additional evidence and determine whether it could exercise jurisdiction pursuant to MCL 722.1201(1)(b). Unfortunately, given the limited evidence in the record regarding the factors under MCL 722.1201(1)(b), this Court is unable to review de novo whether Michigan could have jurisdiction pursuant to that subsection.

Additionally, by focusing solely on residency, the trial court failed to consider whether defendant and KC have a significant connection with Ohio or Georgia *other than mere presence* and whether substantial evidence is available in either state regarding KC's care, protection, training, and personal relationships. As a result, the trial court failed to consider whether Ohio or Georgia may have jurisdiction under MCL 722.1201(1)(b), and, as a result, failed to determine whether Michigan could exercise jurisdiction pursuant to MCL 722.1201(1)(d). Because the lower court record lacks evidence concerning both factors under MCL 722.1201(1)(b) with regard to Ohio and Georgia, this Court is also unable to determine whether the trial court could exercise jurisdiction under MCL 722.1201(1)(d). Consequently, the trial court erroneously

state, so no other state has already declined to exercise jurisdiction over this case in favor of Michigan.

applied the jurisdictional provisions of the UCCJEA when it failed to consider whether it could exercise jurisdiction under MCL 722.1201(1)(b) and MCL 722.1201(1)(d). *Foskett*, 247 Mich App at 4-5.

Because there are factual disputes regarding KC's residency and there is insufficient evidence in the lower court record for this Court to review de novo whether a Michigan court may exercise jurisdiction over the instant case pursuant to those subsections, we remand this case pursuant to MCR 7.216(A)(5) so that the trial court may take additional evidence and determine whether Michigan may exercise jurisdiction pursuant to MCL 722.1201(1)(b) or MCL 722.1201(1)(d). If the trial court concludes that it has jurisdiction over the case, it is within the discretion of the court to determine whether to exercise that jurisdiction. *Nash*, 280 Mich App at 108.

Next, plaintiff argues that the trial court abused its discretion when it declined to exercise jurisdiction over the case based on its finding that Michigan is an inconvenient forum because it failed to take testimony from both parties regarding disputed facts and relied on an ex parte communication from defendant. We agree, but on the basis that the trial court failed to comply with MCL 722.1207. We review issues of statutory construction de novo and a court's decision to decline to exercise jurisdiction for an abuse of discretion. *Nash*, 280 Mich App at 108.

MCL 722.1207 expressly addresses the circumstances under which a trial court may decline to exercise its jurisdiction under the UCCJEA based on a finding that the state is an inconvenient forum and the procedures that the trial court must follow in doing so. MCL 722.1207 provides, in relevant part:

> (1) A court of this state that has jurisdiction under this act to make a child-custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. The issue of inconvenient forum may be raised upon the motion of a party, the court's own motion, or the request of another court.
>
> (2) Before determining whether it is an inconvenient forum, a court of this state shall consider whether it is appropriate for a court of another state to exercise jurisdiction. *For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including all of the following*:
>
> (a) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child.
>
> (b) The length of time the child has resided outside this state.
>
> (c) The distance between the court in this state and the court in the state that would assume jurisdiction.
>
> (d) The parties' relative financial circumstances.

(e) An agreement by the parties as to which state should assume jurisdiction.

(f) The nature and location of the evidence required to resolve the pending litigation, including the child's testimony.

(g) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence.

(h) The familiarity of the court of each state with the facts and issues of the pending litigation.  [Emphasis added.]

First, the trial court appeared to conclude that it did not have jurisdiction over the case at the settlement conference hearing.  If the trial court did, in fact, conclude that it did not have jurisdiction, it could not subsequently *decline* to exercise jurisdiction that it did not possess.  See MCL 722.1207(1) ("A court of this state *that has jurisdiction under this* act to make a child-custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum."  [Emphasis added.]).

Assuming, however, that the trial court concluded that Michigan is an inconvenient forum even if it did have jurisdiction over the case, we note that the record contains no indication that the trial court considered all of the factors requisite under MCL 722.1207(2).  Instead, the trial court only provided the following reasoning:

It would be foolish to have jurisdiction here when the child lives with mom in Ohio.  She has been married, remarried for two years and her husband has a job there.  And even if I had jurisdiction and she filed a change of domicile[,] I would likely grant it, so it would be foolish for me to take jurisdiction of a case I don't -- I've not had.

I don't think Michigan is the home state, and based on MCL 722.1102(G)[,] which defines home state, and then I find that this is an inconvenient forum for these parties to litigate any further issues regarding this child, so I'm not going to take jurisdiction.  And if dad wants to change his parenting time or anything else[,] he needs to file an action in Ohio in the county that this child lives in, okay.

It is evident from the lower court file that the trial court should have acknowledged evidence already in the record or requested additional information as it considered each factor under MCL 722.1207(2).  For example, the parties' pleadings and a stamp on plaintiff's complaint indicate that a previous case between the parties related to child support and custody was filed, and ultimately dismissed, in the Wayne Circuit Court and assigned to the trial court judge who presided over the instant case, which suggests that the trial court should have considered its familiarity with the facts of the instant case pursuant to MCL 722.1207(2)(h).  Further, the lower court record received on appeal includes no information—apart from the conclusory assertions in the parties' briefs regarding jurisdiction and an email that purportedly contains a "diary" entry that KC wrote on a Kindle device—regarding the various factors listed

-6-

in MCL 722.1207(2). As such, it is evident that the trial court determined that Michigan was an inconvenient forum without sufficient evidence regarding the relevant factors and without considering all of the relevant factors.

Moreover, MCL 722.1207(2) provides that the court "shall allow the parties to submit information," but it does not appear that the trial court did so before it determined that Michigan was an inconvenient forum. Additionally, MCL 722.1207(3) states:

> If a court of this state determines that it is an inconvenient forum and that a court of another state is a more appropriate forum, it shall stay the proceedings upon condition that a child-custody proceeding be promptly commenced in another designated state and may impose any other condition the court considers just and proper.

Thus, even if the trial court had properly concluded that Michigan was an inconvenient forum, it erred by dismissing the case instead of staying the proceeding in accordance with the procedure proscribed in MCL 722.1207(3).

A trial court abuses its discretion when it misinterprets or misapplies the law. *Bynum v ESAB Group, Inc*, 467 Mich 280, 283; 651 NW2d 383 (2002). Thus, because the trial court failed to determine whether it has jurisdiction under MCL 722.1201(1)(b) or MCL 722.1201(1)(d)—which was necessary for it to conclude whether it did, in fact, have jurisdiction before it could *decline to exercise* that jurisdiction, MCL 722.1207(1)—and subsequently failed to consider each of the relevant factors as required under MCL 722.1207(2), the trial court abused its discretion when it declined to exercise jurisdiction over the case based on its finding that Michigan is an inconvenient forum.

There are no published Michigan cases that directly address a trial court's failure to make explicit findings under MCL 722.1207. But in general, the remedy for a failure to make proper findings of fact under the Child Custody Act (CCA), MCL 722.21 *et seq.*, is to remand the case to the trial court for a reevaluation of the relevant factors. See *Rittershaus v Rittershaus*, 273 Mich App 462, 475-476; 730 NW2d 262 (2007) (remanding the case after the trial court made no factual findings regarding the best-interest factors delineated in the CCA and denied the defendant's motion to change custody with no explanation). We conclude that the same standard should apply to a trial court's failure to make factual findings under MCL 722.1207(2) before it concludes that it is an inconvenient forum. Accordingly, on remand, the trial court must take additional evidence and consider each factor under MCL 722.1207(2).

Finally, plaintiff argues that the trial court's orders should be reversed because it relied on an ex parte communication from defendant. We disagree.

"Generally, to preserve an issue for appellate review, the issue must be raised before and decided by the trial court." *Detroit Leasing Co v City of Detroit*, 269 Mich App 233, 237; 713 NW2d 269 (2005). Plaintiff did not object to the trial court's consideration of the ex parte communication, i.e., a statement of residency that defendant faxed to the trial court. Thus, this issue is not preserved for appeal. Unpreserved claims are reviewed for plain error, which "occurs at the trial court level if (1) an error occurred (2) that was clear or obvious and (3)

prejudiced the party, meaning it affected the outcome of the lower court proceedings." *Duray Dev, LLC v Perrin*, 288 Mich App 143, 150; 792 NW2d 749 (2010).

We note that plaintiff has failed to cite any case law in his brief on appeal regarding the applicable standard to review this issue or support with authority his assertion that the trial court's orders must be reversed due to the ex parte communication. An appellant may not merely announce a position then leave it to this Court to discover and rationalize the basis for the appellant's claims; nor may an appellant give an issue only cursory treatment with little or no citation of authority. *McIntosh v McIntosh*, 282 Mich App 471, 485; 768 NW2d 325 (2009). Further, "[t]his Court will not search for authority to sustain or reject a party's position." *Phillips v Deihm*, 213 Mich App 389, 401; 541 NW2d 566 (1995). Consequently, we find that plaintiff has abandoned this argument. Moreover, were there any error, it was harmless.

In *Grievance Adm'r v Lopatin*, 462 Mich 235, 262-263; 612 NW2d 120 (2000), quoting Shaman, Lubet & Alfini, Judicial Conduct and Ethics (3d ed), § 5.01, pp 159-160, our Supreme Court discussed the danger of ex parte communications:

> *Ex parte* communications deprive the absent party of the right to respond and be heard. They suggest bias or partiality on the part of the judge. *Ex parte* conversations or correspondence can be misleading; the information given to the judge "may be incomplete or inaccurate, the problem can be incorrectly stated." At the very least, participation in *ex parte* communications will expose the judge to one-sided argumentation, which carries the attendant risk of an erroneous ruling on the law or facts. At worst, *ex parte* communication is an invitation to improper influence if not outright corruption.

The Code of Judicial Conduct, Cannon 3(A)(4), also provides guidance for the judiciary regarding ex parte communications.

The transcript of the settlement conference indicates that the trial court was not aware that counsel for the parties had not received a copy of the statement of residency that defendant personally faxed to the trial court. But, even assuming that the trial court erred by considering the ex parte communication, the record contains no indication that plaintiff was prejudiced by the trial court's consideration of the document. The trial court acknowledged that it had received a statement of residency by fax at the beginning of the settlement conference, and when the court realized that neither attorney had received a copy of the document, the court immediately had copies provided to counsel. The trial court also asked defendant to "corroborate that document" on the record. Defendant did, in fact, verify and explain her timeline of KC's residency since June 2011, but she was not under oath when she did so. While defendant was confirming the timeline, plaintiff's counsel stated on the record that based on school records, she disputed the amount of time that defendant claimed that she and KC lived in Georgia. As such, it is apparent that plaintiff had the opportunity to challenge information in the ex parte communication and, in fact, disputed its accuracy. Likewise, it appears that the risks of incomplete or inaccurate information and one-sided argumentation identified by the Michigan Supreme Court in *Lopatin* were cured by the parties' discussion on the record during the settlement conference regarding the facts in the document. *Lopatin*, 462 Mich at 262-263.

Further, MCR 2.613(A) provides the following with regard to harmless errors: "[A]n error or defect in anything done or omitted by the court . . . is not ground for . . . vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice." Given that plaintiff had an opportunity to challenge, and actually did challenge, the information in the ex parte communication, we find no indication that the trial court's consideration of the document was inconsistent with substantial justice. Therefore, because the trial court's considering the ex parte communication did not constitute a plain error that affected plaintiff's substantial rights, and was instead harmless error, we will not reverse or otherwise modify the orders entered on that basis. *Id.*; *Duray*, 288 Mich App at 150.

We reverse and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. As the prevailing party plaintiff may tax costs pursuant to MCR 7.219.

/s/ Jane E. Markey
/s/ Donald S. Owens
/s/ Elizabeth L. Gleicher