*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J. THORNHILL, Minor.

UNPUBLISHED
April 27, 2023

No. 362195
Washtenaw Circuit Court
Family Division
LC No. 22-000026-NA

Before: JANSEN, P.J., and REDFORD and YATES, JJ.

PER CURIAM.

The lawyer-guardian ad litem (LGAL) for the minor child, JT, appeals as of right the trial court's order dismissing a petition by the Department of Health and Human Services (DHHS) for jurisdiction over JT and to terminate the parental rights of respondent-mother, a Florida resident. On appeal, the LGAL argues that the trial court erred when it determined that it could not exercise temporary emergency jurisdiction over the child and failed to communicate with JT's home state as required under the Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA), MCL 722.1101 *et seq.* We affirm.

## I. FACTUAL BACKGROUND

In April 2022, mother and her one-year-old daughter, JT, arrived in Michigan from their home in Florida to visit mother's boyfriend. On April 26, 2022, JT was admitted to the hospital with several life-threatening injuries after losing consciousness in the home. JT's injuries included broken ribs and a bruised rib, a Grade 5 liver laceration, an injury to her pancreas, a bruised face, chin, and abdomen, and wounds on her leg. JT was intubated and required surgery. Hospital staff reported suspected abuse and neglect to the DHHS. Mother explained JT had been "bear-hugging" mother's leg, mother "wiggled her leg" to get free to take a shower, and JT "let go and flew into the tv stand." Mother said that JT looked fine beforehand, but admitted that she did not check JT for injuries. When mother got out of the shower, she found that JT "was cold to the touch and not responding to stimuli, so she contacted 911." On April 27, 2022, mother was arrested and charged with first-degree child abuse. The DHHS contacted the Florida Department of Children and Families to confirm that no active case concerning JT was pending there.

-1-

On April 29, 2022, JT's father, who had joint legal and physical custody of JT,[1] arrived in Michigan not knowing when JT would be released from the hospital. On May 4, 2022, the DHHS petitioned the trial court for removal of JT and for termination of mother's parental rights. JT was discharged from the hospital on May 6, 2022, and released to JT's father, who took JT to Florida. At the preliminary hearing, mother acknowledged that because Florida was JT's home state, the case was governed by the UCCJEA, and specifically MCL 722.1204. Mother argued that because she was incarcerated on the filing date of the petition and JT's legal father was present and had the authority to provide care and custody for JT, no emergency existed, so the trial court did not have jurisdiction to hear the matter.

The DHHS and the LGAL asserted that the emergency continued to exist because mother could post bond, be released, and return to Florida with her parental rights to JT intact. In other words, mother continued to pose a threat to JT. The LGAL further insisted that the trial court was obligated to contact Florida authorities to determine whether that state wanted to take jurisdiction or instead defer to proceedings going forward in Michigan. That determination would dictate the length of the trial court's temporary emergency jurisdiction. At the preliminary hearing conducted on June 24, 2022, the trial court agreed with mother, finding that the emergency was over because JT was safe with her father in Florida. After the trial court determined that it lacked jurisdiction, it dismissed the petition in an order issued on June 24, 2022. This appeal by the LGAL followed.

## II. LEGAL ANALYSIS

The LGAL contends that the trial court abused its discretion when it decided that it did not have temporary emergency jurisdiction to hear the case involving JT's removal and dismissed the petition. This Court reviews de novo questions of law as to whether the trial court has jurisdiction under the UCCJEA. See *Cheesman v Williams*, 311 Mich App 147, 150; 874 NW2d 385 (2015). Beyond that, this Court reviews the trial court's decision regarding the exercise of that jurisdiction for an abuse of discretion. *Id*. "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). All issues of statutory construction are reviewed de novo. *Cheesman*, 311 Mich App at 151.

A trial court may not exercise jurisdiction under the UCCJEA if, at the time the proceeding in Michigan is commenced, a child-custody proceeding is already in progress in a court of another state that has jurisdiction in substantial conformity with the UCCJEA "unless that proceeding has been terminated or is stayed by the court of the other state because a court of [Michigan] is a more convenient forum under section 207 [i.e., MCL 722.1207]." MCL 722.1206(1). The term "child-custody proceeding" refers to "a proceeding for divorce, separate maintenance, separation, *neglect*, *abuse*, dependency, guardianship, paternity, *termination of parental rights*, and protection from domestic violence, in which the issue may appear." MCL 722.1102(d) (emphasis added).

But according to the UCCJEA, a Michigan court "has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency

---

[1] Florida court documents used the phrases "parenting plan" and "parental responsibility" rather than custody, but granted mother and JT's father the equivalent of joint physical and legal custody.

to protect the child because the child . . . is subjected to or threatened with mistreatment or abuse." MCL 722.1204(1). In this case, the DHHS and the LGAL asked for the trial court to exercise this temporary emergency jurisdiction. Because of that request, coupled with the preexisting custody determination rendered by a Florida court, the trial court in this case was required to "immediately communicate with the court of the other state." MCL 722.1204(4). But that communication never occurred, even though the UCCJEA states that the purpose of such a communication is "to resolve the emergency [and] protect the safety of the parties and the child[.]" *Id.* To be sure, the trial court properly determined that JT's home state was Florida. Further, the trial court correctly found that a Florida court had already made a child-custody determination and that all parties still resided in Florida. Finally, the trial court took note of the existing circumstances, including the placement of the minor child with her father in Florida, and concluded that the threat of harm had passed, so the trial court found that no emergency supported the exercise of jurisdiction under the UCCJEA, MCL 722.1204(1).

Although we conclude that the trial court erred by failing to communicate with the Florida courts as required by MCL 722.1204(4), we nonetheless find that the trial court did not commit an abuse of its discretion in deciding that the emergency had passed with the return of the minor child to Florida with her father, so there was no basis for the exercise of jurisdiction under the UCCJEA, MCL 722.1204(1). Mother was already detained when the trial court dismissed the case, and she ultimately entered a plea to a felony charge of child abuse in the second degree, MCL 750.136b(3). For that crime, mother was sentenced to serve a prison term of 18 months to 10 years in the custody of the Michigan Department of Corrections, and her earliest possible date of release is October 25, 2023. Thus, the trial court correctly concluded that any "temporary emergency" that could support jurisdiction under the UCCJEA, MCL 722.1204(1), had passed. Because the trial court lacked any basis to exercise temporary emergency jurisdiction over the minor child, the trial court acted well within its discretion in dismissing this case.

Affirmed.

/s/ Kathleen Jansen
/s/ James Robert Redford