*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JOSEPH R. DULAR,

        Plaintiff-Appellant,

v

DTE ENERGY COMPANY and UNDERWATER
ENGINEERING SERVICES, INC.,

        Defendants-Appellees,

and

CHAMPION PAINTING SPECIALTY SERVICES
CORP. and DAY AND ZIMMERMANN,
INCORPORATED,

        Defendants.

UNPUBLISHED
October 15, 2024
2:09 PM

No. 367115
Monroe Circuit Court
LC No. 2021-143972-NO

Before: CAMERON, P.J., and K. F. KELLY and GARRETT, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting summary disposition under MCR 2.116(C)(10) in favor of defendants DTE Electric Company ("DTE") and Underwater Engineering Services, Inc. ("UESI"). Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises out of injuries plaintiff sustained after he fell during a recoating project in DTE's Fermi 2 nuclear power plant. DTE and UESI entered into a contract designating UESI as the general contractor for the project. DTE also entered into a contract with defendant Day and Zimmermann, Inc., to assist DTE employees in providing radiation protection for the project. For their part, UESI entered into a subcontract with defendant Champion Painting Specialty Services

-1-

Corp. to perform the desludging, coating, painting, and related support services for safety and nonsafety related work in the Fermi 2 plant.[1]

Plaintiff, a Champion employee, was injured after "Herculite," a polymer or vinyl thread mix tarp used as a contamination barrier, was laid over a work platform concealing the gaps on the lower work platform. When plaintiff walked over the platform, he fell into one of the gaps that had been obscured by the Herculite. Plaintiff sustained injuries to his shoulder, neck, back, and kidney. Plaintiff filed suit, alleging, as relevant to this appeal, claims of negligence against DTE and UESI under the common work area doctrine and a claim of premises liability against DTE. UESI and DTE each filed motions for summary disposition, which the trial court granted. After the court denied plaintiff's motion for reconsideration, this appeal followed.

## I. STANDARDS OF REVIEW

This Court reviews a motion for summary disposition de novo. *Clay v Doe*, 311 Mich App 359, 362; 876 NW2d 248 (2015). Summary disposition is proper under MCR 2.116(C)(10) if, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." A court reviewing a motion under MCR 2.116(C)(10) must consider the substantively admissible evidence offered in opposition to the motion. *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999). To survive summary disposition, the opposing party must set forth specific facts establishing a genuine issue of material fact for trial. *Id.* at 120. A genuine issue of material fact exists when the evidence presented "leave[s] open an issue upon which reasonable minds might differ." *Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013) (quotation marks and citation omitted).

## III. ANALYSIS

### A. UESI

Plaintiff argues that the trial court erred when it granted summary disposition in favor of UESI on the basis of the common work area doctrine. Plaintiff contends that UESI attempted to delegate its supervisory and coordinating duties to Champion through their subcontract, but that DTE never authorized the delegation. Accordingly, plaintiff contends that UESI should have been supervising Champion, and summary disposition was improper. We disagree.

General contractors are not generally liable for the negligence of their subcontractors or their subcontractors' employees unless the plaintiff can establish a claim under the common work area doctrine. *El-Jamaly v Kirco Manix Constr, LLC*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 164902); slip op at 12. The plaintiff must prove the following elements to establish a claim under the common work area doctrine:

---

[1] Defendants Champion and Day and Zimmerman were dismissed with prejudice after the parties entered stipulated orders agreeing to the dismissals.

(1) the defendant, either the property owner or general contractor, failed to take reasonable steps within its supervisory and coordinating authority (2) to guard against readily observable and avoidable dangers (3) that created a high degree of risk to a significant number of workmen (4) in a common work area. [*Id*. at ___; slip op at 15 (quotation marks and citation omitted).]

"The scope of a general contractor's responsibility will often depend on the nature of the risk and of the precaution or safeguard claimed to have been omitted." *Funk v Gen Motors Corp*, 392 Mich 91, 101; 220 NW2d 641 (1974), overruled in part on other grounds by *Hardy v Monsanto Enviro-Chem Sys, Inc*, 414 Mich 29; 323 NW2d 270 (1980). The common work area doctrine "is understood as an exception to the general rule that, in the absence of its own active negligence, a general contractor is not liable for the negligence of a subcontractor or a subcontractor's employee and that the immediate employer of a construction worker is responsible for the worker's job safety." *Latham v Barton Malow Co*, 480 Mich 105, 112; 746 NW2d 868 (2008). The rationale behind the common work area doctrine "is that the law should be such as to discourage those in control of the worksite from ignoring or being careless about unsafe working conditions resulting from the negligence of subcontractors or the subcontractors' employees." *Id*. In addition, the general contractor is often in the best "position to coordinate work or provide expensive safety features that protect employees of many or all of the subcontractors." *Id*. (quotation marks and citation omitted).

In the trial court, UESI presented evidence that it subcontracted with Champion, and the contract incorporated the performance of duties that were described in the agreement between UESI and DTE. UESI also presented evidence that DTE knew of and approved UESI's subcontract with Champion. Accordingly, plaintiff's assertion that DTE did not authorize UESI's delegation to Champion is without merit. Moreover, beyond reciting the elements of the common work doctrine in conclusory fashion, citing the Occupational Safety and Health Act ("OSHA"), 29 USC 651 *et seq*., and arguing that UESI failed to properly subcontract with Champion, plaintiff has failed to adequately brief his arguments against UESI. An appellant may not announce a position and leave it to this Court to research and rationalize the basis for the appellant's claims. *Cheesman v Williams*, 311 Mich App 147, 161; 874 NW2d 385 (2015). In addition, an appellant may not give an issue cursory treatment with no citation to authority. *Id*. "Further, [t]his Court will not search for authority to sustain or reject a party's position." *Id*. (quotation marks and citation omitted; alteration in original). Therefore, plaintiff has abandoned his argument that the trial court erred by dismissing plaintiff's claim against UESI. See *id*.

## B. DTE

Plaintiff also argues that the trial court erred by granting DTE's motion for summary disposition regarding plaintiff's negligence claim under the common work area doctrine and premises liability claim. We disagree.

Unlike a general contractor, an owner of the structure that is under construction can be held responsible if it retained control of the work or did not fully delegate to a contractor. *Funk*, 392 Mich at 101. Such an owner "could properly be found to have sufficiently exercised a retained control subjecting it to liability for the failure to implement reasonable safety precautions." *Id*. at 100-101.

[T]he "retained control doctrine" is subordinate to the "common work area doctrine" and simply stands for the proposition that when the "common work area doctrine" would apply, and the property owner has stepped into the shoes of the general contractor, thereby "retaining control" over the construction project, that owner may likewise be held liable for the negligence of its independent subcontractors. [*Ormsby v Capital Welding, Inc*, 471 Mich 45, 61; 684 NW2d 320 (2004).]

There is no specific test to determine whether an owner or general contractor has retained control over a construction project. *Candelaria v BC Gen Contractors, Inc*, 236 Mich App 67, 75; 600 NW2d 348 (1999). Moreover, the focus is not on the legal status of the relationship between the owner and the subcontractor. *Id*. at 74. Rather, the owner may be held liable for its own negligence for failing to employ safety standards in areas where the owner's retained control over the project "was sufficient to create a corresponding duty to implement such precautions." *Id*.

Evidence presented to the trial court showed that the day before plaintiff's accident, there was a mockup at the end of the day shift at the request of DTE senior management because they wanted Champion to begin decontaminating the area. The focus of the mockup was to instruct the workers to use Herculite on the upper platform to capture the contamination as close to the source as possible so that the contamination did not spread and cross-contaminate other material. The material covered with radiological contamination had to be cleaned off before Champion could begin the abrasive blasting. Because there were numerous workers performing different tasks in the plant, Champion wanted to wait until some of that work was completed before Champion began decontamination. However, DTE senior management wanted to begin the work immediately because the recoating project was driving an outage and the project was behind schedule.

In order to invoke the common work area doctrine, plaintiff was required to establish that DTE failed to take reasonable steps within its supervisory and coordinating authority. *El-Jamaly*, ___ Mich at ___; slip op at 15. Plaintiff has not presented any evidence that DTE failed to take reasonable steps to prevent the danger. Rather, the evidence established that the mockup led by DTE was thorough and specific that Champion was to place the Herculite on the upper level. DTE did not instruct any of the workers to spread Herculite across the work platform on the lower level, which was where plaintiff was injured. "[A] plaintiff's failure to satisfy *any* one of the four elements of the 'common work area doctrine' is fatal to a *Funk* claim." *Ormsby*, 471 Mich at 59. Because plaintiff failed to establish that DTE did not take reasonable steps to avoid the danger that plaintiff faced, he failed to establish that DTE was liable under the common work area doctrine. Concerning plaintiff's claim that DTE was liable because it had a duty to plaintiff under OSHA, plaintiff has failed to cite any authority for this claim. *Cheesman*, 311 Mich App at 161 ("An appellant may not merely announce a position then leave it to this Court to discover and rationalize the basis for the appellant's claims[.]").

Plaintiff also argues that the trial court erred when it granted summary disposition in favor of DTE as to plaintiff's premises liability claim. A claim premised on premises liability "require[s] a plaintiff to prove four essential elements: duty, breach, causation, and harm." *Kandil-Elsayed v F & E Oil, Inc*, 512 Mich 95, 110; 1 NW3d 44 (2023). In a premises liability case, "a landowner's duty to a visitor depends on th[e] visitor's status" as an invitee, a licensee, or a trespasser. *Id*.

-4-

at 111, 143. The parties in this case agree that plaintiff was an invitee and, as an invitee, DTE owed plaintiff "a duty to exercise reasonable care to protect [plaintiff] from an unreasonable risk of harm caused by a dangerous condition of the land." *Id.* at 112 (quotation marks and citation omitted). The parties do dispute, however, whether DTE had notice of the dangerous condition. A premises owner breaches its duty to an invitee "when it knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 8; 890 NW2d 344 (2016) (citation omitted). Summary disposition is appropriate if there is no question of material fact that the premises owner lacked actual or constructive notice of the dangerous condition. *Id.*

Although plaintiff asserts that DTE had notice of the hazard because it knew that the Herculite was placed over the work platform obscuring gaps between the planks, there is nothing in the record that supports plaintiff's assertion that DTE knew that Champion had covered the lower work platform with Herculite. Plaintiff also failed to present any evidence that DTE should have known about the hazard. At the mockup, DTE directed that the workers should place Herculite on the upper platform. DTE did not advise covering the lower platform to catch the contaminated drippings, and there was no evidence in the record explaining the circumstances involved in changing the process after the mockup. Therefore, plaintiff failed to establish the DTE knew that the mockup plan had changed to full coverage of a work platform on the lower level. Thus, because plaintiff failed to present evidence that DTE had notice of the hazardous condition that caused plaintiff's fall, the trial court did not err when it granted DTE's motion for summary disposition as to plaintiff's premises liability claim.

Affirmed. Defendants, as the prevailing parties, may tax costs. MCR 7.219(A).

/s/ Thomas C. Cameron
/s/ Kirsten Frank Kelly
/s/ Kristina Robinson Garrett