*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BRYCE WELLING,

        Plaintiff-Appellant,

v

JESSICA WELLING,

        Defendant-Appellee.

UNPUBLISHED
December 22, 2025
11:37 AM

No. 374958
Wayne Circuit Court
LC No. 24-114171-DC

Before: ACKERMAN, P.J., and BORRELLO and LETICA, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order dismissing the case under the Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA), MCL 722.1101 *et seq*. We affirm.

## I. PROCEDURAL AND FACTUAL HISTORY

On December 3, 2024, plaintiff filed a complaint in Wayne Circuit Court seeking to establish custody, parenting time, and support. Specifically, plaintiff alleged that he resided in Wayne County, Michigan, but defendant resided in Utah. The parties, a married couple, are the parents of four minor children, then ranging from three to ten years of age, and previously lived in Wayne,[1] Michigan. On June 28, 2024, the family purportedly traveled to Utah for a vacation. According to plaintiff, after arriving in Utah, defendant locked him out of the home, separated him from the children,[2] and informed him that defendant and the children would not be returning to Michigan with him. Plaintiff claimed that defendant proceeded to create "artificial ties" by enrolling the children in school, applying for public assistance, and seeking medical providers in Utah. Defendant also obtained a personal protection order (PPO) against plaintiff and filed for divorce in Utah. Plaintiff stated that these actions occurred without plaintiff's knowledge or consent, and he was unable to bring the children home to Michigan. He asserted that defendant's

---

[1] Wayne is a city in Wayne County.

[2] Plaintiff asserted that defendant "coaxed" their children into the basement by claiming that a flood was coming to keep them from him.

PPO was dismissed on November 20, 2024. In addition to plaintiff requesting sole legal and physical custody of the minor children, parenting time in accordance with the children's best interests, and an award of child support, he also submitted an emergency ex parte motion for temporary possession of the minor children.

On December 4, 2024, the trial court entered an order denying plaintiff's request for emergency ex parte relief, including temporary possession of the minor children. Instead, the trial court scheduled a hearing for December 20, 2024, via Zoom, and ordered plaintiff to serve the motion and order on defendant. At this hearing, the trial court swore in the parties, but they were not called to testify. Instead, plaintiff's counsel claimed that defendant, once in Utah, attempted to force plaintiff to sign paperwork that would allow the Utah court to exercise jurisdiction over the parties and their children, but he refused. Defendant then obtained a PPO and filed for divorce in October 2024, although the minor children had only been present in Utah for four months. It was asserted that defendant's representations of a family vacation were fraudulent and designed to move the children to Utah indefinitely. Plaintiff claimed that defendant's PPO was dismissed in November 2024, and the children's friends, doctors, and church were located in Michigan. Plaintiff's counsel further alleged that the Utah court held a hearing on December 17, 2024, entered a temporary parenting time order, exercised temporary emergency jurisdiction, and attempted to contact the trial court in Wayne County. Plaintiff also asserted that defendant was already in violation of the Utah orders by failing to comply with the temporary parenting time order. He argued it was imperative to return the children to Michigan during the Christmas break to allow them to return to their Michigan school in January 2025.

Defendant's counsel alleged that defendant only received a notice of hearing without any documents pertaining to the trial court's case such as a complaint or motion. Defense counsel was only recently retained and did not have time to review the documents provided by plaintiff's counsel late on December 19, 2024. Defendant requested an adjournment under the circumstances.

Plaintiff's counsel responded that she had attempted to serve defendant's Utah counsel who refused to accept service. And defendant could not be served "because she was staying at a shelter[.]"[3] Apparently, defendant was only served with the ex parte order and the notice of hearing. Nonetheless, plaintiff opposed an adjournment, claiming that it was detrimental to the children's return to their Michigan home and school.

The trial court noted that it had not received a phone call or e-mail from the Utah court. Consequently, it would ask staff to check for voice messages and any e-mail deemed spam.

---

[3] In the transcript, plaintiff's counsel stated, "I did send the complaint, the motion, everything to [defendant's] Utah attorney. He refused to accept service which is his right and we hired a Utah process server. Could not serve her because she was staying at a shelter, but they did serve her immediately." This portion of the transcript seemingly contains an inconsistency. Plaintiff's counsel then continued, "The only chance they could serve her was at court and the process server did tell me, unfortunately, they served the ex parte order that you issued which had the notice of hearing for today."

Plaintiff's counsel provided the Utah case number, the assigned judge, and the assigned commissioner, who appears to be the Utah equivalent of a Michigan referee. The trial court adjourned the hearing to January 2025, to allow for communication with the commissioner and for defendant's response.

On January 6, 2025, defendant filed her response to plaintiff's emergency motion and alternatively requested that the trial court in Wayne County decline jurisdiction as an inconvenient forum. Specifically, defendant alleged that plaintiff filed his emergency motion after the children had attended Utah schools for four months, after plaintiff had been admitted to a Utah hospital for psychological treatment, after a PPO had been issued against plaintiff because of his physical and verbal attacks on defendant, after the Utah divorce action had been filed for 2 ½ months, and two weeks after the parties had consented to the Utah court's jurisdiction by agreeing to temporary parenting time orders that plaintiff ultimately violated. Defendant claimed that the Utah court was forced to order plaintiff to return the children to her care. Defendant alleged that she did not lock the children away from plaintiff. Instead, defendant advised plaintiff that she did not feel safe returning to Michigan with him because he verbally and physically abused her. This abuse allegedly also occurred with their minor children when plaintiff refused to stop the car after a child became sick because the illness interfered with plaintiff's itinerary. Moreover, defendant asserted that the parties had discussed moving to Utah to be closer to their families.

Defendant also claimed that she had obtained a PPO against plaintiff in Utah on August 15, 2024. And, on October 9, 2024, defendant filed the divorce action against plaintiff in Utah. During this time, the children were attending school in Utah with plaintiff's consent. Furthermore, plaintiff was admitted to a Utah hospital for psychiatric care. Because the parties reached agreements as to action by the Utah court, defendant dismissed her PPO and consented to a mutual restraining order. The parties decided to resolve divorce and custody issues by an order dated November 20, 2024, but entered on January 3, 2025. Because of the parties' agreement, defendant allowed plaintiff to take the children for Thanksgiving. Without notice, plaintiff returned to Michigan with the children and refused to bring them back, causing defendant to obtain an emergency order in Utah. Plaintiff violated the Utah court orders and placed the children in danger, warranting the denial of his request for jurisdiction in Wayne County, Michigan. The Utah court accepted emergency jurisdiction and the parties consented to the Utah court's jurisdiction. Yet, plaintiff now sought Michigan interference.

Finally, defendant asserted that plaintiff's request impacted the children's established custodial environment, but plaintiff had not briefed the issue or requested an evidentiary hearing. Rather, the factors of the UCCJEA favored resolution by the Utah court because Michigan was an inconvenient forum.

With the response, defendant submitted a temporary order that was the result of the parties' agreement as submitted to the Utah commissioner on November 20, 2024. They previously agreed to dismiss the PPO and enter into a mutual restraining order in the Utah divorce action. The parties additionally consented to a temporary parenting time schedule with plaintiff receiving four hours two nights a week and every other weekend. This order also allocated the responsibility for the children's health and dental benefits as well as expenses. Defendant further submitted a December 5, 2024 writ of assistance from the Utah court authorizing her to immediately retrieve the children from Michigan.

On January 31, 2025, the trial court held a hearing in Wayne County. Plaintiff did not appear at the hearing because he had been detained for parental interference in Utah. Although the exact details were unclear, it was offered that plaintiff had issues with timeliness when exercising parenting visits. Plaintiff's counsel alleged that defendant had similar problems and had been charged with parental interference on five occasions for noncompliance with parenting time. The trial court advised that, after consulting with the Utah commissioner, a hearing would be held addressing the intent in initially taking the children to Utah. Plaintiff's counsel preferred that the hearing occur over Zoom, citing plaintiff's presence there. Defendant's counsel similarly requested the hearing over Zoom. Defense counsel then alleged that the question of intent was irrelevant because the Utah court had exercised jurisdiction, divesting Michigan of jurisdiction under the UCCJEA. In response, plaintiff's counsel indicated that consent to subject-matter jurisdiction did not result in a waiver. The trial court instructed plaintiff to obtain the Utah hearing transcripts for the next hearing and further advised the parties to present whatever documents or evidence "with testimony" as well.

Before the next hearing, the parties filed briefs. Plaintiff alleged that Michigan was the children's home state and that there were no grounds to decline home state jurisdiction. Plaintiff asserted that the family went to Utah for a planned vacation and visited Moab for a few days before traveling to Ogden, Utah. On July 14, 2024, during a visit to defendant's sister's home, defendant asked to speak with plaintiff outside. Defendant's family locked plaintiff out of the home and refused to allow him to have contact with his children. Plaintiff went to his brother's home for a couple weeks before seeking hospital treatment for depression and anxiety. Ultimately, plaintiff could not see his children because defendant had obtained a PPO and filed for divorce. Plaintiff asserted that the PPO was designed to cause delay and establish jurisdiction. He claimed that she converted a family vacation into permanent residence in Utah.[4]

In her brief, defendant reiterated the factual allegations regarding abuse, the PPO, and the parties' agreement to address their issues before the Utah court. Defendant asserted that Utah appropriately exercised jurisdiction in accordance with the UCCJEA to which the parties also consented and ratified. Moreover, even if the Michigan court determined it had jurisdiction, it should decline to exercise it as an inconvenient forum.

On February 27, 2025, the trial court held a hearing to determine whether Michigan was the home state, whether it had jurisdiction over the children to render custody determinations, or whether Utah should make those determinations. Although both parties were sworn in at the start of the hearing, the attorneys did not call them to testify or present any evidence. Instead, the parties' attorneys argued their respective positions as set forth in their briefs. At the conclusion of the hearing, the trial court noted that it would consult with the Utah commissioner before issuing a decision.On March 5, 2025, the trial court issued an opinion and order concluding that Michigan

---

[4] In his brief, plaintiff addressed the factors of MCL 722.1207, presenting a narrative argument. There is no indication that plaintiff ever submitted the transcripts from the Utah proceedings as previously directed.

was the home state of the parties' children. Nonetheless, the trial court further determined that Utah was the more convenient forum under MCL 722.1207.

From this decision, plaintiff appeals.

## II. STANDARD OF REVIEW

This Court "review[s] de novo whether the circuit court has jurisdiction under the UCCJEA." *Nock v Miranda-Bermudez*, 347 Mich App 623, 627; 16 NW3d 522 (2023). "Even when a court can exercise jurisdiction under the UCCJEA, its decision to do so is reviewed for an abuse of discretion." *Id.* An abuse of discretion occurs when the decision falls outside the range of principled outcomes. *Id.* Similarly, this Court also reviews a trial court's determination regarding the convenience of a forum state for an abuse of discretion. *Veneskey v Sulier*, 338 Mich App 539, 548-549; 980 NW2d 551 (2021). We review issues of statutory construction de novo. *Nock*, 347 Mich App at 627.

## III. THE UCCJEA

Both Michigan and Utah have enacted the UCCJEA to resolve jurisdictional disputes when there is more than one state involved in a child-custody determination. MCL 722.1101 *et seq.*; Utah Code 78B-13-101 *et seq.*[5] The UCCJEA's purpose is "to declare that custody decrees of sister states will be recognized and enforced, to achieve greater stability in custody arrangements, and to prevent forum-shopping." *Veneskey*, 338 Mich App at 544. The UCCJEA, which became effective in Michigan in 2002, was intended to:

> (1) rectify jurisdictional issues by prioritizing home-state jurisdiction, (2) clarify emergency jurisdictional issues to address time limitations and domestic-violence issues, (3) clarify the exclusive continuing jurisdiction for the state that entered the child-custody decree, (4) specify the type of custody proceedings that are governed by the act, (5) eliminate the term "best interests" to the extent it invited a substantive analysis into jurisdictional considerations, and (6) provide a cost-effective and swift remedy in custody determinations. [*Atchison v Atchison*, 256 Mich App 531, 536; 664 NW2d 249 (2003).]

A court must look to the provisions of the UCCJEA to determine whether it has jurisdiction to make an initial child-custody determination. *Nock*, 347 Mich App at 628. Therefore, a court may only make an initial child-custody determination if it has subject-matter jurisdiction under the UCCJEA. *Id.* at 628-629.

A court in Michigan has jurisdiction to make the initial child-custody determination if Michigan "is the home state of the child on the date of the commencement of the proceeding, or

---

[5] The Utah UCCJEA was amended and renumbered effective September 1, 2025 as Utah Code 81-11-101 *et seq.* All references in this opinion will be to the UCCJEA that was in effect in Utah as of the date this lawsuit was filed. Even so, the substance of the provisions remains the same and the amendments would not change the outcome.

was the home state of the child within 6 months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state." MCL 722.1201(1)(a). Under MCL 722.1102(g):

> "Home state" means the state in which a child lived with a parent or a person acting as a parent for at least 6 consecutive months immediately before the commencement of a child-custody proceeding. In the case of a child less than 6 months of age, the term means the state in which the child lived from birth with a parent or person acting as a parent. A period of temporary absence of a parent or person acting as a parent is included as part of the period.

But, even when a Michigan court has subject-matter jurisdiction to make a child-custody determination under the UCCJEA, it may decline to exercise jurisdiction because another state is a more appropriate forum. *Foster v Wolkowitz*, 486 Mich 356, 359; 785 NW2d 59 (2010). To determine if Michigan is an inconvenient forum, the court must consider all relevant factors included in MCL 722.1207(2).

In addition to the subject-matter jurisdiction outlined in MCL 722.1201 to make an initial custody determination, MCL 722.1204 provides temporary, emergency jurisdiction in situations when a child is present in the state and the exercise of jurisdiction is necessary to protect the child, a sibling, or a parent from abuse or the threat of abuse. MCL 722.1204(1). If there is no prior custody determination when a court exercises emergency jurisdiction under MCL 722.1204, the emergency order will remain in effect until a court in another state with subject-matter jurisdiction under MCL 722.1201 or MCL 722.1203 issues an order. MCL 722.1204(2). If no such order is issued, the emergency custody determination becomes a final custody determination if the order so provides and the state exercising emergency jurisdiction becomes the child's home state. MCL 722.1204(2). Consequently, a temporary emergency order remains in effect only "until an order is obtained from the state court having proper jurisdiction under the UCCJEA." *Foster*, 486 Mich at 364 n 15.

The UCCJEA also provides that, except for temporary emergency jurisdiction, a Michigan court may not exercise its jurisdiction if, at the time the Michigan action is filed, "a child-custody proceeding has been commenced in a court of another state having jurisdiction substantially in conformity with this act, unless the proceeding has been terminated or is stayed by the court of the other state because a court of this state is a more convenient forum under section 207." MCL 722.1206(1).

Under MCL 722.1201(1)(a), a Michigan court may also exercise jurisdiction if, even though it was not the children's home state on the date of the commencement of the proceeding, it "was the home state of the [children] within 6 months before the commencement of the proceeding and the [children] [are] absent from this state but a parent or person acting as a parent continues to live in this state."[6] Here, before the children's departure to Utah in June 2024, Michigan was their

---

[6] In this case, plaintiff provided a UCCJEA affidavit in which he attested that his current address was Wayne, Michigan to satisfy the requirement that a parent continues to live in this state. And,

home state because they lived in Michigan most, if not all, of their lives. Moreover, defendant conceded that Michigan was the children's home state. Accordingly, Michigan was the children's home state within six months of the filing of this suit in December 2024.

Despite the trial court's acknowledgment of Michigan's jurisdiction, the trial court could still decline to exercise its jurisdiction if it determines that another state is a more appropriate forum. MCL 722.1207. Again, this decision is reviewed for an abuse of discretion. *Veneskey*, 338 Mich App at 548. Before making its determination that a court of another state is a more appropriate forum, a court must consider, at a minimum:

(a) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child.

(b) The length of time the child has resided outside this state.

(c) The distance between the court in this state and the court in the state that would assume jurisdiction.

(d) The parties' relative financial circumstances.

(e) An agreement by the parties as to which state should assume jurisdiction.

(f) The nature and location of the evidence required to resolve the pending litigation, including the child's testimony.

(g) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence.

(h) The familiarity of the court of each state with the facts and issues of the pending litigation. [MCL 722.1207(2).]

The trial court shall allow the parties the opportunity to submit information and to consider "all relevant factors." MCL 722.1207(2).

Here, the trial court held an evidentiary hearing to address whether jurisdiction was appropriate in Michigan under the UCCJEA. The trial court previously advised plaintiff to provide transcripts from the Utah litigation and any other evidence. Although both parties were sworn in, they did not provide testimony at the hearing, nor did any other witnesses testify. Counsel for each party appeared and provided argument on the record. The trial court did not make any factual findings or rulings on the record at the hearing, but it stated that it would communicate with the

---

although defendant narratively alleged that plaintiff had applied for state assistance in Utah and indicated in his application that he resides in Utah, she did not present evidence regarding plaintiff's Utah residence to the trial court.

court in Utah to determine whether jurisdiction was proper in Utah or Michigan under the UCCJEA.

As noted, the trial court's written order indicated that it communicated with the commissioner involved in the Utah litigation, and that the courts in both states agreed that Utah was a more convenient forum. After listing the factors that it was required to consider under MCL 722.1207(2), the trial court provided the following analysis:

> [T]he Weber County Court found cause to enter a protective order against [plaintiff] on an *Ex Parte* basis, and then found cause to continue same after a hearing. The children have now lived in Utah since June of 2024, and have been enrolled in school there. It is very important to this Court that the Plaintiff has agreed to move forward with the divorce action in Utah, yet wants this Court to determine custody issues. It is also important that [plaintiff] entered into a consent order for custody and parenting time, and began to exercise parenting time pursuant to that order. It is also relevant to this Court that there are criminal charges pending against both litigants in Utah arising out of their conduct at parenting time exchanges. Furthermore, there is a CPS investigation pending in Utah relevant to the safety and well being of the children. It is clear to this Court that based on the circumstances and the conduct of the parties, Weber County is a more convenient forum.

Plaintiff argues that this analysis is incomplete because the court did not make factual findings on each of the statutory factors. Despite contending that the trial court's factual findings were inadequate, plaintiff notes that the trial court allowed for supplemental briefing, information, and exhibits. Curiously, he urges this Court to make a de novo finding of the factors in the interest of expediency and efficiency. We decline to do so and affirm the trial court's dismissal.

We acknowledge that the failure to consider each "relevant" factor under MCL 722.1207(2) and the failure to make explicit findings may warrant a remand for a reevaluation of the factors. *Cheesman v Williams*, 311 Mich App 147, 160-161; 874 NW2d 385 (2015). But, in the present case, the trial court was aware of the factors set forth in MCL 722.1207(2), having delineated them in its opinion. Moreover, as the trial court aptly noted, the key or relevant issues involved the issuance of the PPO based on defendant's claims of domestic violence, MCL 722.1207(2)(a), the amount of time the children resided in Utah, MCL 722.1207(2)(b), plaintiff's agreement to proceed with the divorce action in Utah including consent to child issues surrounding parenting time, insurance, and expenses, MCL 722.1207(2)(e), and the nature and location of the evidence to resolve the litigation where multiple law enforcement and child protection agencies in Utah had pending investigations, were familiar with the parties, and more apt to resolve these issues more quickly. MCL 722.1207(2)(f), (g), and (h). Although the

trial court did not identify the individual factors when rendering its factual findings, it is apparent that the trial court considered the "relevant" factors[7] in its ruling.

Moreover, a party may not harbor error as an appellate parachute. *Clohset v No Name Corp*, 302 Mich App 550, 555; 840 NW2d 375 (2013). That is, a party may not assent to counsel's action as proper in the trial court and assign it as error on appeal. *Id*. Indeed, in the trial court, the parties opted not to present evidence or testimony pertinent to the factors, instead choosing to provide narrative argument and the Utah litigation orders to support their respective positions. The parties' narrative arguments were insufficient to support the factors. The Utah orders indicated a PPO was issued and a writ of assistance was necessary to compel plaintiff to return the children to Utah. Under the circumstances, we cannot conclude that the trial court abused its discretion in determining Wayne County, Michigan was an inconvenient forum and dismissing the child-custody matter.[8]

Affirmed.

/s/ Matthew S. Ackerman
/s/ Stephen L. Borrello
/s/ Anica Letica

---

[7] The trial court did not expressly consider the distance between the jurisdictions. However, it did note that the children's home state was in Michigan and that defendant sought to remain in Utah, where she had family support. MCL 722.1207(2)(c). Additionally, the trial court did not expressly cite to the parties' relative financial circumstances. MCL 722.1207(2)(d). Yet, in addition to the parties' allegations about seeking public assistance, defendant asserted that they were financially supported by their families during a prior hearing. In plaintiff's brief, however, he claimed to be self-employed. The trial court may not have deemed this factor as "relevant" in light of the parties' focus on claims of domestic violence, parental interference, and the need for the PPO.

[8] Although plaintiff challenges the sufficiency of the record communication with the Utah commissioner, this issue was not raised in the statement of questions presented and is waived. MCR 7.212(C)(5); *Seifeddine v Jaber*, 327 Mich App 514, 521; 934 NW2d 64 (2019).